Pursuant to ARAP Rule 18, the United States District Court for the Middle District of Alabama has requested this Court to answer questions of law which that court deemed determinative of an action before it on which there is no clear controlling precedent in the decisions of the Supreme Court of Alabama.
In support of the certificate, the Federal District Court submitted the following facts:
 "(1) Joseph A. Baker, et al., } }
Plaintiffs } }
Roland C. Gamble and } Terry Ray Taylor, for } Civil themselves and all others } Action No. 76-413-N similarly situated, } Intervenors } }
v. } }
Bill Baxley, et al., } }
Defendants }
 (2) This suit is brought by the plaintiff who is an inmate of the Alabama penal system. Roland C. Gamble and Terry Ray Taylor, also inmates of the state penal system, have been allowed to intervene and have standing. The defendants are Bill Baxley, individually and in his official capacity as Attorney General of the State of Alabama, and Judson C. Locke, Jr., individually and in his official *Page 470 
capacity as Commissioner of the Alabama Prison System.
 "Plaintiff and plaintiff intervenors contend that on July 29, 1976, the Alabama Legislature passed, over the Governor's veto, Legislative Act No. 182,[1]
[footnote omitted] Regular Session, 1976, which allowed the Alabama Board of Corrections to award incentive good time credit in exceptional cases of good behavior and industriousness to prison inmates. At the request of the Commissioner of the Board of Corrections, the Attorney General's Office issued an opinion[2] [footnote omitted] on September 8, 1976, declaring the Act to apply retroactively. That pursuant to this opinion several hundred prison inmates were given credits and released from prison. On November 24, 1976, the Attorney General personally issued a second opinion[3] [footnote omitted] declaring under the authority of Gayle v. State, 261 Ala. 84, 72 So.2d 848 (1954), that an act could not have retroactive application unless this feature was included in the title of the act. This opinion concluded that `under no circumstances should any prisoner be released after the receipt of this opinion if that release is dependent in any way on a retroactive application of Act No. 182. The commutation time of all prisoners currently confined should be computed or re-computed by applying Act No. 182 to them from its effective date only.' The Commissioner of the Board of Corrections thereafter rescinded his earlier calculations for incentive good time credits for all inmates who had not yet been released, including plaintiff and plaintiff intervenors, and recomputed the incentive good time credits pursuant to the opinion of November 24, 1976.
 "The plaintiff and plaintiff intervenors claim discrimination by the defendants between themselves and those inmates who were credited with incentive good time pursuant to the Attorney General's opinion of September 8, 1976, and released from custody while they, although credited with such good time but before being released, had their good time revoked and recalculated pursuant to the Attorney General's opinion of November 24, 1976, thus establishing a more future date of release than that established for them under the September 8, 1976, opinion. In order to determine whether the defendants have discriminated between plaintiff, plaintiff intervenors and those inmates who were given credit for good time and released and the constitutional dimensions involved, it is necessary to know whether Act No. 182 is retroactive or nonretroactive in it application and if retroactive only what effect does this have on plaintiff and plaintiff intervenors. Accordingly,
"(3) Under the law of the State of Alabama:
"1. Is Act No. 182 retroactive in its application?
 "2. If Act No. 182 is declared not to be retroactive in its application, what effect does this have on those prison inmates who were granted incentive good time credits pursuant to the Attorney General's Opinion of September 8, 1976, but had the granting thereof revoked and continued in custody pursuant to the November 24, 1976, Opinion of the Attorney General? This certificate has been prepared by said federal court."
We answer Certified Question No. 1 in the negative.
In answer to Certified Question No. 2, we opine that incentive good time granted retroactively to inmates under Act No. 182 as a reward for good behavior exhibited by the inmates prior to the effective date of Act No. 182, July 29, 1976, was granted without authority of law. Consequently, the fact that the Board of Corrections granted "good time" to some inmates because of a mistaken apprehension of the law would not require the Board to perpetuate its mistake by granting similar good time to inmates such as plaintiff and plaintiff intervenors. *Page 471 
 I
Act No. 182 was not intended to be retrospective. In arriving at the legislative intent, we have applied the rule of statutory construction consistently applied in Alabama that "statutes are to be considered prospective, unless the language is such as to show that they were intended to be retrospective." Mobile Housing Board v. Cross, 285 Ala. 94,229 So.2d 485, 487 (1969). The words of the statute do not clearly state that "good behavior" of an inmate at the time prior to the effective date of the Act[1] can be considered by the Board of Corrections in computing the inmates' so-called "good time." In fact, from the words used by the legislature, a contrary inference must be drawn. The legislature used words such a "anew classification" and "the newly created classification" in Section 2 of the Act. These words imply that the legislature intended that the Act would look to the future. Furthermore, in Section 3 of the Act, the legislature stated:
 "It is the intent of this act that the custody classification provided for in Section 2 of this act be used by the Board only in exceptional cases of good behavior and industriousness in order that inmates be given a meaningful incentive for good behavior." [Emphasis added.]
The word "incentive," means "something that constitutes a motive or spur" and "serving to encourage, rouse, or move to action." Webster's Third New International Dictionary, Unabridged. The word "incentive," by definition, necessarily, implies prospectiveness.
 II
The second certified question concerns those inmates who were initially granted sentence reduction credits for good behavior exhibited prior to the effective date of Act No. 182, but who were later told that they could not receive credit for good behavior exhibited before Act No. 182 became law.
As set out in the Certified Questions: *Page 472 
 "The plaintiff and plaintiff intervenors claim discrimination by the defendants between themselves and those inmates who were credited with incentive good time pursuant to the Attorney General's opinion of September 8, 1976, and released from custody while they, although credited with such good time but before being released, had their good time revoked and recalculated pursuant to the Attorney General's opinion of November 24, 1976, thus establishing a more future date of release than that established for them under the September 8, 1976, opinion."
Facially, under the fact situation posed, we fail to see how the Board could be guilty of the type of invidious discrimination prohibited by Alabama's Constitution and the Fourteenth Amendment to the Federal Constitution. The equal protection clause is violated only when state action is without any reasonable basis and is arbitrary. Board of Trustees v.Talley, 291 Ala. 307, 280 So.2d 553 (1973).
The unequal application of Act No. 182, as we understand the facts, was based upon a misapprehension of the Act's legal effect, and was not based upon an unjustifiable standard such as race, religion, sex or other arbitrary classification. Consequently, the unequal application would not violate the equal protection clause of either the state or federal Constitution. Cf. Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501,7 L.Ed.2d 446 (1962).
The fact that some inmates may have been released prematurely because the Board of Corrections was relying upon a misapprehension of the law cannot work a discrimination because of the Board's refusal to release others. Whether the Board could take back into custody those who have been erroneously released, we need not say. It is sufficient to point out that the Board was not legally or constitutionally required to perpetuate its mistake. See State Board of Administration v.Jones, 212 Ala. 380, 102 So. 626 (1925), where this Court said:
 "`. . . So where the language of the statute is reasonably plain in its meaning, such interpretation and practice will not be accorded the effect of an amendment or repeal, and the legislative intent will be nevertheless declared and enforced as expressed. . . .'" [Emphasis added.]
The misapprehension of law in the Jones case endured for forty years before the legislative mandate was finally vindicated. The erroneous interpretation and practice involved here went uncorrected for less than three months. We opine, as this Court held in the Jones case, that "such interpretation and practice will not be accorded the effect of an amendment or repeal."
CERTIFIED QUESTIONS ANSWERED.
TORBERT, C.J., and BLOODWORTH, FAULKNER, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
[1] Act No. 182 provides:
"To provide for commutation of time for certain prisoners for good behavior at a rate to be determined by the Board of Corrections within the limits herein provided and to provide that such good time earned apply toward parole eligibility.
Be it Enacted by the Legislature of Alabama:
"Section 1. In order to encourage prison discipline commutation time shall be used as a reward for good behavior at the discretion of the Board of Corrections.
"Section 2. The Board of Corrections is hereby empowered to create within the existing classification system a new classification which would authorize a maximum deduction from the term of the sentence of an exceptional inmate of two (2) days for each one (1) day served. Inmates serving a term for life shall not be eligible for the newly created classification hereby authorized except for the purpose of computing time served toward parole eligibility as hereinafter provided in Section 6.
"Section 3. It is the intent of this act that the custody classification provided for in Section 2 of this act be used by the Board only in exceptional cases of good behavior and industriousness in order that inmates be given a meaningful incentive for good behavior.
"Section 4. A prisoner under two (2) or more concurrent sentences shall be allowed commutation as if they were all one sentence.
"Section 5. For any misconduct in violation of any Federal or State law or prison rule or regulation, including escape or attempt to escape, any part or all of the commutation which shall have accrued in favor of the prisoner to the date of said misconduct may be forfeited and taken away by the Board.
"Section 6. Any and all cummutation of time shall be included and computed as time served toward parole eligibility. Inmates serving under a sentence of life shall not be subject to the custody classification provided for in Section 2 of this act for the purpose of earning a commutation of time. The provisions of Section 2 shall apply to those inmates serving life sentences provided, however, that said custody classification shall be used solely for the purpose of computing time served toward parole eligibility such time earned not to exceed two (2) years. The provisions of Section 3 of this act shall be applicable to classification of inmates serving life sentences in the same manner as classification of other inmates.
"Section 7. The provisions of this act are severable. If any part of the act is declared invalid or unconstitutional, such declaration shall not affect the part which remains.
"Section 8. All laws or parts of laws which are in conflict with this act are hereby repealed.
"Section 9. This act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law."