VINCENT G. DOYON
*vs.*
STATE OF MAINE

Kennebec.    Opinion, June 14, 1962.

*Vincent G. Doyon,* Pet'r. for Writ of Error Coram Nobis,
pro se.

*Richard A. Foley,* Assistant Attorney General,
for state.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

WEBBER, J.   In October, 1959 the appellant was tried by a jury and convicted of the murder of his divorced wife, Alice Doyon.   He was represented by competent counsel of his own choosing.   Although certain exceptions were saved during the trial, no effort was made to obtain a new trial either by way of exceptions or appeal.   It is not suggested that there was any deterrent to appeal.   Appellant is now serving a life sentence at the Maine State Prison.

In November, 1960 a petition was filed in the Superior Court for a writ of error coram nobis alleging a deprivation of constitutional rights.   The matter was fully heard by a justice of that court in February, 1961 and the writ dismissed.   Appeal from this decision brings the matter before us.

It may be noted that the appellant, although found not to be indigent, elected to conduct his hearing upon the writ of error coram nobis and his subsequent appeal to the Law Court without the aid of counsel.   He has submitted an exhaustive written brief which, although understandably lacking in precise legal form, fully and clearly sets forth his legal position.

Excerpts from the record of the original trial incorporated into the record here reveal the factual situation.   On

the morning of the day on which the homicide was committed the appellant appeared at a hearing in the Superior Court at which the amount of weekly support to be provided by him for his daughter was in issue. The court ordered a weekly payment of $50. In what appears to have been an attitude of anger and despondency as a result of this order the appellant passed the remainder of the day drinking and contemplating revenge. In the evening hours he called upon his divorced wife and in the presence of his twelve year old daughter shot and killed her. He fled directly to the home of relatives and informed them of the homicide. A few minutes later he was arrested by the police. The assistant county attorney was called and there followed an interrogation which culminated in the signing of a written confession by the appellant. During the progress of the interrogation and with the approval and consent of the appellant a blood sample was taken by a doctor for the purpose of testing the appellant's condition as to sobriety. The analysis of this sample disclosed that there was then 16/100% by weight of alcohol in his blood. During much of the interrogation the conversation was preserved by means of a tape recording now a part of this record.

In the course of the original trial the State sought the admission of the signed confession into evidence. An issue was at once tendered as to whether the alleged confession was voluntarily given without coercion and under circumstances such as to make it properly admissible. The nature and course of the interrogation as well as the mental state and degree of sobriety of the then respondent were fully explored by direct and cross examination. After repeated reference by counsel both for the State and the respondent to the existence of the tape recording, the State moved that it be admitted in evidence. The respondent and his counsel had previously listened to the recording and knew its contents. Upon objection raised by counsel for the respondent

the tape was excluded from the evidence. The confession was admitted and was submitted to the jury.

In the instant matter before us the appellant seeks to attack the admission of the confession at his original trial as being in violation of his constitutional rights. Specifically he avers that the confession was obtained from him by coercion and was not his voluntary act. He further asserts that the State knowingly employed perjured testimony in the prosecution of its case against him. A further allegation that the State knowingly withheld evidence favorable to the appellant finds no support in the evidence and seems to have been abandoned by the appellant.

It is now apparent that appellant relies almost entirely upon the contents of the tape recording to support his allegations. Even if the transcribed conversation tended to cast any doubt on the voluntariness of the confession, which it clearly does not, its attempted use for that purpose at this stage would come too late. It is not the purpose of a writ of error coram nobis to re-try issues which were tendered and fully tried prior to conviction. Nor is it a device by which the respondent may reconsider his earlier decisions as to what evidence to offer in his own behalf and what evidence to seek to exclude from consideration by the jury. As was stated in *Dwyer* v. *State of Maine*, 151 Me. 382 at 396: "The matter involved in the original trial is not open on writ of error coram nobis, but only the questions presented relating to alleged errors of fact, which fact if known at the time of trial would have prevented the judgment from being made." The appellant cannot be permitted to blow hot and cold as to the use of the tape recording and we emphasize again the fact which seems to us decisive that appellant and his counsel were fully cognizant of all that would be revealed by the recording *before* their objection was entered to its admission in evidence at the original trial and *before* the evidence was closed and they

had lost their own opportunity to offer it. If it has a bearing now on the issue of voluntariness of the confession or on the credibility and veracity of State's witnesses, it had a bearing then. The reason for objecting to it is revealed in the following colloquy taken from the record of the hearing in the instant case:

> "The Court: The State sought to put it (the tape recording) in evidence and it was not admitted in evidence?
>
> Mr. Doyon: Yes, sir.
>
> The Court: At the objection of your counsel?
>
> Mr. Doyon: Yes, sir. May I suggest why I believe the objection was taken at the time, sir? The tape recording would have been, let's say, prejudicial against me. The wording used on the tape recording, the way it was said, well, it would have been taken in a wrong light."

In his brief to the Law Court the appellant seems to argue that the tape recording should have been admitted at his original trial *in spite of his objection.* He points out that the presiding justice gave no reason for the exclusion, and he adds: "It cannot be said that it was excluded because of the objection." We appreciate the fact that appellant has no training in the elementary rules of trial practice and can only point out that under these rules one who objects to the admission of evidence cannot complain if the evidence is excluded.

Although the two allegations under consideration stand in different technical positions, they are closely related since the claim of perjured testimony is based on alleged discrepancies between the events leading to the signing of the confession and the subsequent testimony of State's witnesses describing those events. Procedurally the State moved initially for a dismissal of the first allegation in appellant's petition for the writ of error coram nobis on the

ground that the appellant had raised the issues of the coercive and involuntary aspects of his confession at his original trial as a matter of record, and that these issues had then been fully litigated and finally adjudicated. The motion to dismiss as to the first allegation was granted by the court. The court later denied a motion to amend the writ to restore the first allegation. At the close of the hearing on the second and third allegations, the justice below ascertained from the appellant that *all* the evidence which he deemed relevant to the first allegation had been in fact presented in support of his second and third allegations. At this point the justice below informed the appellant that he would "consider Claim No. 1 in the light of what you have produced here." We need not now determine whether or not the first allegation was open to such consideration at this stage since the justice below did consider it fully in his written opinion and decided it adversely to the appellant. He concluded quite properly that the evidence before him demonstrated that the admissibility of the confession had been fully tried once and could not again be tried on a writ of error coram nobis. *Dwyer* v. *State, supra*; *Smith* v. *United States* (1951), 187 F. (2nd) 192; *Hodges* v. *United States* (1960), 282 F. (2nd) 858.

As to the second allegation charging that the State had knowingly used perjured testimony in its prosecution of the appellant, appellant urges that State's witnesses perjured themselves in minimizing the degree of his intoxication at the time of his interrogation, in characterizing the confession as having been "dictated" by the appellant, in stating that appellant was informed of his rights before the confession was signed, and in relating certain oral statements attributed to appellant as having been uttered during the interrogation. All that we have said as to the availability of the tape recording to the respondent at his original trial has equal application here. All of the foregoing matters

were fully explored at the trial and the credibility of witnesses was left to the jury. We have, however, appraised all of the evidence before us and find no support for the assertions of the appellant. The State's witnesses at the trial expressed the opinion that appellant was during his interrogation under the influence of intoxicating liquor but not intoxicated, that he was angry as a result of the unfavorable decision of the court that morning but not remorseful over the homicide, and that he was nervous, tense and agitated but nevertheless cooperative rather than hostile. The tape recording supports this summation of the condition and attitude of the appellant. He gave a comprehensive and coherent account of the events of the day. The clarity of his memory and ideas was not that of an intoxicated man. His vocabulary was more than adequate and the choice of words his own. Photographs taken of the appellant do not aid us in determining the state of his sobriety. At the point of the actual preparation of the typewritten confession, the appellant did not "dictate" it in a narrow and technical sense. The bare essentials of his activities as he had related them were put in sentence form by the assistant county attorney and were submitted sentence by sentence to the appellant for his approval. Nothing appears in the signed confession which had not been first voluntarily related by the appellant. Nothing was omitted which could have benefited the appellant or which he desired to have included. The confession was a fair and truthful short summation of a much longer narration by the appellant. We note that the method of so-called "dictation" of the confession was fully explained and clarified for the jury by the examination and cross-examination of witnesses so that no doubt remained as to how it was accomplished. During the interrogation the appellant more than once displayed his awareness that he was under no obligation to answer questions. He was so assured by the assistant county attorney and on at least two occasions declined to answer

questions which he apparently felt might cause embarrassment to innocent third parties. He carefully read the confession which began with the words, "I, Vincent Doyon, make the following statement of my own free will and without threat or promise of reward, knowing that it may be used against me." The appellant with what we are satisfied was full comprehension and understanding thereafter signed the document. We can discover no important or prejudicial variations between the actual utterances of the appellant during his interrogation and those attributed to him by State's witnesses at the trial.

The appellant had the burden of proof as petitioner for the writ of error coram nobis and must support his allegations by a preponderance of the evidence. *Dwyer* v. *State, supra.* The justice below correctly held that appellant had failed to sustain this burden.

In the instant case the appellant professes to have the feeling that great injustice has been done him. Since he is now incarcerated for life and has no counsel to advise him, we have surveyed the entire background of his case to ascertain the nature and source of his real grievance. In the preamble of his brief he candidly admits that he was guilty of the homicide with which he was charged but asserts that he should now be serving a sentence for the crime of manslaughter rather than murder. Looking further, we discover that his reason for this belief is that prior to the date of this crime he had been a good citizen holding responsible positions in the community and that at the time of the homicide he was badly intoxicated. Moreover, he continues to lay stress on what he deems an unfair decision of the court in his domestic relations case. No one of these factors will reduce the crime of murder to manslaughter. With reference to the sobriety of the appellant, he cites and expresses familiarity with the case of *State* v. *Arsenault*, 152 Me. 121, but does not seem to apprehend the full significance of the

holding therein and its application to his own case. At page 125 the court said: "Where there are statutory degrees of murder (as formerly in Maine) intoxication may sometimes reduce from first to second degree murder. Intoxication will not reduce to manslaughter where there is malice aforethought, and where there is no provocation or sudden passion. *Voluntary intoxication is no excuse for murder.* 'Voluntary intoxication is not an excuse, or justification, or extenuation of a crime.' * * * Voluntary intoxication is not an excuse for crime, *except in those cases where knowledge or specific intent are necessary elements.* 'Intoxication does not make innocent an otherwise criminal act.'" (First emphasis ours.) Our review of the entire cause satisfies us that there has been no miscarriage of justice and that the appellant was convicted of the crime of murder on the basis of legally admissible evidence without any deprivation of constitutional rights.

Appellant informs us that he previously made an unsuccessful effort to obtain his release by way of a writ of habeas corpus. His present resort to the writ of error coram nobis leads him to argue that he is caught on the post conviction "merry-go-round." Since his complaint is one frequently made to the court, we take this opportunity to respond to it. The appellant has chosen the right method of obtaining a hearing upon his allegations by seeking the writ of error coram nobis. He fails not because of his choice of remedy but because of a failure of proof. In the instant case as in the vast majority of post conviction cases which have come to the attention of the court in recent years, the petitioner is in reality seeking not the correction of legal error in trial and sentence but a commutation of a sentence legally imposed. In such cases it makes no difference what post conviction remedy is employed or how many petitions are addressed to the court. The court is without jurisdiction to commute a sentence and the only authority to grant such

relief is vested exclusively in the Governor and Executive Council.

*Appeal denied.*