396 A.2d 447

**COMMONWEALTH of Pennsylvania**

v.

**Raymond Edward HELSER, Appellant.**

Superior Court of Pennsylvania.

Submitted March 13, 1978.

Decided Dec. 28, 1978.

Blake E. Martin, Public Defender, Chambersburg, for appellant.

George S. Glen, Assistant District Attorney, Chambersburg, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

JACOBS, President Judge:

This appeal follows appellant's conviction and sentence in the court below on the charge of solicitation to commit murder. The issue we must decide is whether the court below erred in the way it handled a note passed to it

from the jury during deliberations.[1] For the reasons that follow, we hold that the court should have questioned the jurors regarding the nature of the information received by them, and therefore grant appellant a new trial.

The evidence produced at trial reveals that sometime during 1976, appellant began discussing a plan to "beat up" Wilmer Sheffield, the husband of a woman with whom appellant had lived for several weeks in the Fall of 1975. Two of appellant's co-workers testified that he enlisted their help in carrying out his plan because of the size of the intended victim. The focus of the plan soon changed, however, from assault to murder. Appellant began talking in terms of killing Sheffield, and requested his two friends to hold the victim down when the time came while he inflicted blows with a crowbar. Appellant's plan also included cutting up Sheffield's body with a chain saw and disposing of the pieces in a quarry. A date was set for Easter night.

Apparently afraid that appellant intended to carry out the scheme, the two co-workers related the plan to the police. Appellant was thereupon arrested and charged with solicitation to commit murder. A jury trial resulted in conviction of the offense charged, and appellant was sentenced to five to ten years imprisonment. This appeal followed.

■ Approximately two hours after the jury had retired for deliberations, a tipstaff delivered a note to the court. In the presence of counsel, the court read the note, which said:

---

1. Appellant also contends that the evidence is insufficient and that § 902 of the Crimes Code is an unconstitutional abridgement of his right to free speech. We find that the evidence is clearly sufficient to sustain the conviction and that appellant's arguments in this respect are directed only to matters of credibility.

Additionally, appellant's attack on the constitutionality of § 902 is patently frivolous: solicitation to commit murder is not constitutionally protected speech. Furthermore, the statute is not void for vagueness in that it does provide an ascertainable standard to guide prospective conduct. *See Commonwealth v. Heinbaugh,* 467 Pa. 1, 354 A.2d 244 (1976).

We need not address appellant's remaining contentions in light of our disposition of this appeal.

Because of information revealed by several members of the jury regarding the defendant we are unable to proceed with dispatch in the conduct of this deliberation.

R. G. Beegle

The jury was then recalled, and instructed as follows:

"Now, members of the jury, first, let me say, though I perhaps was being facetious when I remarked when you go into your deliberations, you may have to change the date on the verdict slip to September 3rd, rather than the 2nd. You have all the time that you need for your deliberations. No one is pressing you in any way.

"There are some matters we could say to you and if it becomes necessary at some later time to address you, we may make those remarks at that time. Let me say, this is a very serious case and an important case for the defendant and the Commonwealth. It has been well tried on both sides. We know you have been at this now for a little more than four hours, and there are complicated questions and counsel and the Court are well aware of that fact. So, we want you to continue with your deliberations. We also want to remind you that in your deliberations, you should address yourselves to the facts of the case; to conclude what those facts are, as you heard them from the witness stand, and to apply those facts and logical inferences drawn from facts to the law as the Court explained the law to you. To do anything other than that would be a violation of your oath as jurors. "Now, we may not, as a matter of law, inquire as to what information you are talking about, because to do that, would be to impeach and attack the sanctity of the jury system. We will not do it. We remind you of your oath as jurors. At this time, we are going to ask the tipstaff to accompany you to Court Room 2. We think you will find it more comfortable."

After the jury was sent out again, defense counsel moved for a mistrial on the basis that some members of the jury had outside knowledge of the case. This motion was denied, whereupon counsel requested permission to voir dire the

jury as to what information was referred to in the note. This request was also denied. We are persuaded that this denial of voir dire was error requiring a new trial.

Our research has revealed no case dealing squarely with the precise situation at hand. However, cases involving prejudicial publicity and outside contact with jurors provide some guidance. In *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975), the trial judge learned after the seventh juror had been selected that one of the jurors had received two letters from his wife. The court was also informed that while the jurors were passing through the lobby of the hotel where they were lodged, the same juror stepped aside to embrace his wife, who tore away from him. Defense counsel objected to proceeding with the selected jurors on the basis that they might have concluded that the contacted juror's wife was fearful because he was on the jury. A mistrial was denied, and on appeal, the Supreme Court held that the denial was proper in light of the action taken by the trial court in questioning each juror and excusing the contacted member.

In *Commonwealth v. Bruno,* 466 Pa. 245, 352 A.2d 40 (1976), the trial judge refused to sequestor the jury in a murder prosecution, and prejudicial publicity concerning a suppressed confession was disseminated by the print and broadcast media during trial. The court refused to grant a mistrial and refused to question the jurors concerning their exposure to the publicity, relying instead on admonitions to the jury that they not expose themselves to "anything concerning this case." The Supreme Court granted a new trial on appeal of Bruno's conviction, holding that the precautionary measures taken by the trial court were insufficient in light of the strong possibility that inherently prejudicial news articles concerning the confession reached the jury.

We find the following quotation from *Bruno* instructive:
When there is a possibility of highly prejudicial materials reaching the jury, the trial court must take appropriate protective action. Although the proper precautions are

inevitably dictated by the circumstances of each case, they must reasonably ensure that no prejudice will occur. 466 Pa. at 266, 352 A.2d at 51.

Our courts have presumed prejudice in certain situations where the nature of the information was known, but its dissemination among the jurors was unknown: *Commonwealth v. Bobko,* 453 Pa. 475, 309 A.2d 576 (1973) (trial booklet distributed to jurors indicating defendant under indictment for other charges); *Commonwealth v. Stewart,* 449 Pa. 50, 295 A.2d 303 (1972) (murder victim's father on panel from which jury selected to hear trial); *Commonwealth v. Price,* 463 Pa. 200, 344 A.2d 493 (1975) (juror made unauthorized visit to scene of crime).

Relief has also been granted where the information communicated to the jurors was so prejudicial that its unfair effect on the jury required the granting of a mistrial: *Commonwealth v. Harkins,* 459 Pa. 196, 328 A.2d 156 (1974) (prospective juror stated during voir dire that defendant stole his car); *Commonwealth v. Santiago,* 456 Pa. 265, 318 A.2d 737 (1974) (witness stated to alternate juror during recess that defendant was a murderer who had killed before).

Here, however, we are unaware of the nature of the information communicated to the jury, although we know that it was discussed among them. Therein lies the problem. We cannot at this point reconstruct the situation by inquiring into what in fact was discussed, for to do so would invade the jury's deliberations and nullify its function. Nonetheless, we cannot ignore the potential for prejudice, particularly in light of the fact that appellant had been convicted of a similar crime previously, in the same county.[2]

Having therefore found a possibility that prejudicial information reached the jury, we must reluctantly conclude that the court below did not take sufficient steps to deter its

2. Some indication of this prior crime was already before the jury after appellant's co-workers testified that in soliciting them he stated "I have done it before and I will do it again," and "I am not afraid to go back to jail."

384

effect. This conclusion is dictated by the fact that the court made no effort to determine the nature of the information. While we are loath to interfere in a discretionary matter of this nature, we find that the required precautionary procedures must include at least a determination of what information has been communicated. From that starting point, a remedy can then be fashioned according to the circumstances to ensure that no prejudice will occur. Absent this information, we cannot sustain a conviction that may be based in part on prejudicial hearsay outside the record.

For the foregoing reasons, the conviction is reversed, the judgment of sentence is vacated, and the case is remanded for a new trial.

HOFFMAN, J., did not participate in the consideration or decision of this case.

CERCONE, J., concurs in the result.

HESTER, J., files a dissenting statement.