STATE of Maine

v.

Gary HUNTER [1].

Supreme Judicial Court of Maine.

Argued May 6, 1982.

Decided July 14, 1982.

Gail Ogilvie, Asst. Atty. Gen., Augusta (orally), Janet T. Mills, Dist. Atty., Auburn (orally), James E. Tierney, Atty. Gen., Rufus E. Brown, Deputy Atty. Gen., Pasquale Perrino, Asst. Atty. Gen., Augusta, for Dept. of Corrections.

Vafiades, Brountas & Kominsky, Marvin H. Glazier (orally), Bangor, for defendant.

1. This case was prosecuted below and also appealed under the caption *In re Gary Hunter*. We have renamed the case to reflect the fact that this proceeding is conceptually a continuation of the prior criminal proceeding, *State of Maine v. Gary Hunter*, in which Gary Hunter was sentenced. If the statute under which the present petition was brought were constitutionally valid, any affirmative judicial action pursuant to it would be a resentencing of defendant and hence a modification of the judgment entered in the original criminal proceeding.

Before McKUSICK, C. J., and NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

McKUSICK, Chief Justice.

In this case the Law Court addresses for the first time the question whether section 1255 of the Criminal Code, providing for judicial resentencing on the basis of a previously convicted person's "progress toward a noncriminal way of life," passes muster with the separation of powers clauses of the Maine Constitution. We hold that, as sought to be applied here for the resentencing of Gary Hunter, section 1255 is an unconstitutional attempt to invest the judiciary with a power expressly and exclusively granted by the Maine Constitution to the Governor. We accordingly affirm the Superior Court's dismissal of the Department of Corrections' petition for modification of Gary Hunter's sentence.

The resentencing statute, 17–A M.R.S.A. § 1255 (Supp.1981),[2] reads in full as follows:

**Sentences in excess of one year deemed tentative**

1. When a person has been sentenced to imprisonment for a term in excess of one year and such imprisonment has not been suspended, the sentence is deemed tentative, to the extent provided in this section.

2. If, as a result of the department's evaluation of such person's progress toward a noncriminal way of life, the department is satisfied that the sentence of the court may have been based upon a misapprehension as to the history, character or physical or mental condition of the offender, or as to the amount of time that would be necessary to provide for protection of the public from such offender, the department may file in the sentencing court a petition to resentence the offender. The petition shall set forth the information as to the offender that is deemed to warrant his resentence and shall include a recommendation as to the sentence that should be imposed.

3. The court may, in its discretion, dismiss a petition filed under subsection 2 without a hearing if it deems the information set forth insufficient to warrant reconsideration of the sentence. If the court finds the petition warrants such reconsideration, it shall cause a copy of the petition to be served on the offender, the district attorney, the Attorney General and the victim of the crime or, in the case of a criminal homicide, on the victim's next of kin, all of whom shall have the right to be heard on the issue.

4. If the court grants a petition filed under subsection 2, it shall resentence the offender and may impose any sentence not exceeding the original sentence that was imposed. The period of his being in the custody of the department prior to resentence shall be applied in satisfaction of the revised sentence.

5. For all purposes other than this section, a sentence of imprisonment has the same finality when it is imposed that it would have if this section were not in force. Nothing in this section may alter the remedies provided by law for appealing a sentence, or for vacating or correcting an illegal sentence. As used in this section, "court" means the judge who imposed the original sentence, unless he is disabled or otherwise unavailable, in which case it means any judge exercising similar jurisdiction.

On March 14, 1978, in Superior Court (Aroostook County), Gary Hunter pleaded guilty to fourth degree homicide. The court sentenced him to imprisonment at the Maine State Prison for eight years.

Three years after Hunter began serving his term, the Department of Corrections filed a petition with the Superior Court, pursuant to section 1255, urging the court to reconsider Hunter's sentence for the following reasons:

2. With the rest of the Maine Criminal Code, the resentencing statute now numbered as section 1255 was enacted by the legislature in 1975, to be effective May 1, 1976. At that time, and until October, 1981, it appeared in identical form as section 1154 of the Code. This opinion will refer to the section by the current numbering.

Gary Hunter has made substantial progress towards a noncriminal way of life since his imprisonment in March, 1978. Mr. Hunter has an exemplary prison record. In addition, he has participated in alcohol counseling, the Alcoholics Anonymous program and the Yokefellow spiritual growth group. He shows considerable insight into his prior alcoholic dependency which was the major factor in his criminal conduct. Currently he resides at the Bangor Pre-Release Center, is a full-time student at the Bangor Theological Seminary and works on a part-time basis at the Seminary in the maintenance department. In light of Mr. Hunter's performance and progress, the sentencing judge may have misapprehended the amount of time necessary to protect the public from him.

On the basis of those considerations, the department urged the court to resentence Hunter, placing him on probation for the remainder of his eight-year term on condition that he continue alcohol counseling.

The Superior Court dismissed the petition, holding that insofar as the statute attempted to give the court jurisdiction to "modify a sentence, after it had been imposed, on the ground of changes in the attitude or behavior of the offender," it usurped the executive power to grant pardons, reprieves, and commutations of sentences. The Department of Corrections has appealed.[3]

The pertinent provisions of the Maine Constitution are explicit and restrictive. Article III, entitled "Distribution of Powers," commands separation of the powers of government among the three great branches with a double emphasis: section 1 declares that the governmental powers "shall be divided into three *distinct* departments, the legislative, executive and judicial"; and then section 2 expressly prohibits any person "belonging to one of these departments [from] exercis[ing] any of the powers prop-

erly belonging to either of the others, except in the cases herein *expressly* directed or permitted." (Emphasis added)

Articles IV, V, and VI of the Maine Constitution specify the powers of the three distinct departments, legislative, executive and judicial, respectively. Article VI merely speaks of the "judicial power of this State" being vested in the Supreme Judicial Court and such other courts as the legislature may establish. As here relevant, Article V, which spells out in detail the powers of the executive branch, is very specific in vesting the Governor with comprehensive power to modify sentences:

> He [the Governor] shall have power to remit *after conviction* all forfeitures and penalties, and to grant reprieves, commutations and pardons, except in cases of impeachment, upon such conditions, and with such restrictions and limitations as may be deemed proper . . . .

(Emphasis added) *Me.Const.* art. V, pt. 1, § 11.

Because of article III, section 2, the separation of governmental powers mandated by the Maine Constitution is much more rigorous than the same principle as applied to the federal government. The United States Constitution has no provision corresponding to article III, section 2 of the Maine Constitution, explicitly requiring that no one person exercise the powers of more than one of the three branches of government. Rather, at the federal level the separation of powers principle is inferred from the overall constitutional structure. Because the federal principle is implicit only, rather than explicit, it may be appropriate in that governmental structure to take a functional rather than a formal approach to separation of powers questions: the inquiry is whether a given departure from strict separation has the effect of impairing the integrity or ability to function of the branch to which a power has

---

**3.** Appellee State of Maine was represented on this appeal by the former Assistant Attorney General who prosecuted Hunter in the proceeding in which he was originally sentenced. Hunter's appointed counsel who represented

him in that original proceeding also represented him on this appeal, appearing at oral argument and joining the brief filed by appellant Department of Corrections.

been constitutionally granted, or the effect of vesting excessive or unchecked authority in the branch that has assumed the power. *See* L. Tribe, *American Constitutional Law*, § 2–2 at 15 (1978); 1 K. Davis, *Administrative Law*, § 2.6 at 81 (2d ed. 1978). Under the Maine Constitution, however, our inquiry is narrower: has the power in issue been explicitly granted to one branch of state government, and to no other branch? If so, article III, section 2 forbids another branch to exercise that power.[4] In *People v. Herrera*, 183 Colo. 155, 516 P.2d 626 (1973), the Colorado Supreme Court, interpreting constitutional language equivalent to the double emphasis of our own article III on separation of powers, held that a statute that attempted to give the courts power to reduce sentences after they had been imposed, was unconstitutional as an invasion of the executive power to grant commutations. In the case before us, our task is to determine whether the authority to revise sentences granted the courts by section 1255 falls within "the judicial power" envisioned by the Maine Constitution, article VI, section 1, or whether it falls within the commutation powers that the constitution has expressly granted only to the executive under article V, part 1, section 11.

In an analysis of section 1255, it is significant that subsection 2 on its face provides two different bases for judicial modification of a sentence previously imposed: it permits resentencing either (i) if the sentence was based on a "misapprehension as to the history, character or physical or mental condition of the offender"; or (ii) if the sentence was based on a misapprehension "as to the amount of time that would be necessary to provide for protection of the public from such offender." The first basis for resentencing appears to contemplate that it would be used only when the sentencing judge becomes aware that he was factually mistaken as to circumstances that existed at the time of the sentencing and were of some influence in his sentencing decision. On the other hand, the second basis for resentencing provided by section 1255(2) contemplates that the judge will change the sentence because he concludes, in view of the offender's good behavior while serving his sentence, that he no longer poses a threat to society. Plainly, the Department of Corrections seeks resentencing of Gary Hunter under the second basis specified by section 1255(2). In any event, either basis is by subsection 2 subject to being triggered only "as a result of the department's evaluation of [the offender's] progress toward a noncriminal way of life"; and the threshold summary dismissal by the sentencing judge occurs, by subsection 3, if he determines that the information provided by the department as to the offender's progress is "insufficient to warrant reconsideration of the sentence."

One's understanding of section 1255[5] can be improved by examining the metamorphoses that the resentencing proposal went through during the course of the work of the Criminal Law Revision Commission. The draft of June 16, 1972,[6] presented by

---

4. Our approach is akin to one of the tests used by federal courts for determining whether an issue is nonjusticiable as a "political question": whether there is a "textually demonstrable constitutional commitment" of the issue to another branch of the government. *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962) (explaining why the "guarantee clause," U.S.Const. art. IV § 4, is nonjusticiable).

5. Section 1255 has been called "a masterpiece of breathtaking ambiguity." Zarr, *Sentencing*, 28 Me.L.Rev. 117, 144 (1976).

6. That June 16, 1972, draft read in part as follows:

A. When a person has been sentenced to imprisonment for a term in excess of one year, the sentence shall be deemed tentative, to the extent provided in this section, for a period of one year following imposition of the sentence.

B. If, as a result of examination and classification by the Department of Mental Health and Corrections of a person under sentence of imprisonment for a term in excess of one year, the Department is satisfied that the sentence of the court may have been based upon a misapprehension as to the history, character, or physical or mental condition of the offender, the Department, during the period specified in subsection A, may file in the sentencing court a petition to resentence the offender. The petition shall set forth the information as to the offender that

the Commission's Chief Counsel was radically different from section 1255 presented to and enacted by the legislature in 1975 as part of the Code. Sentences were open to be modified for only one year, only the first basis for resentencing now set forth in section 1255(2) was proposed, and the triggering event was the department's examination and classification of the prisoner "upon his arrival at a correctional facility, or shortly thereafter."[7] The Chief Counsel's comment accompanying that initial draft[8] identified its source as the Massachusetts Criminal Code, chapter 264, section 5. Its ancestry in section 7.08 of the Model Penal Code (1962) is also obvious. The resentencing section went through at least two intermediate drafts before it reached the form of present section 1255 in the draft of August 28, 1974. In the draft of May 28, 1974, any time restriction on resentencing was removed from subsection 1, and in subsection 2 there were two separate triggering events to correspond to the two separate bases for resentencing that had by then been injected.[9] The final Commission draft eliminated the separate trigger "as a result of examination and classification by the Department," which had been from the start matched up to the first basis for resentencing. Thus, one might well conclude that the Commission intended thereafter that only the inmate's "progress toward a noncriminal way of life" would trigger resentencing on either of the two bases provided in what is now section 1255(2).[10]

Appellant Department of Corrections argues that the two bases for resentencing set forth in section 1255(2) are collapsed into one, for purposes of constitutional appraisal, by the statutory application of the term "misapprehension" to both. Because both bases for judicial action under section 1255 involve no more than correction of "misapprehension" or error at the time of sentencing, the statute grants, the Department urges, only powers that fall within the realm of traditional judicial activity.

We cannot agree. A trial judge's decision as to what sentence is necessary to protect the public from an offender is not a

is deemed to warrant his resentence and may include a recommendation as to the sentence that should be imposed.

The other three subsections of that draft read substantially the same as the present section 1255(3)–(5).

7. The language quoted in the text is from the Chief Counsel's comment that accompanied the June 16, 1972, draft.

8. The "Comment-1975" attached to section 1154 (the predecessor of section 1255) is an abridgment of that 1972 comment. The radical changes later made in the resentencing provision before the Criminal Law Revision Commission submitted it to the legislature render that comment nearly useless in explaining the present section 1255.

9. Subsection 2 of the May 28, 1974, draft read as follows:

If, as a result of examination and classification by the Department of Mental Health and Corrections of a person under an imprisonment sentence, or as a result of the Department's subsequent evaluation of such person's progress toward a non-criminal way of life, the Department is satisfied that the sentence of the court may have been based upon a misapprehension as to the history, character, or physical or mental condition of the offender, or as to the amount of time that would be necessary to provide for protection of the public from such offender, the Department may file in the sentencing court a petition to resentence the offender. The petition shall set forth the information as to the offender that is deemed to warrant his resentence and may include a recommendation as to the sentence that should be imposed.

10. Since "a misapprehension as to the history, character or physical or mental condition of the offender" is not the basis on which the department seeks resentencing for Gary Hunter, we are not called upon to pass upon the constitutionality of that portion of section 1255. In any future case of resentencing sought under that first basis, two questions would have to be answered affirmatively before the constitutionality issue is even reached: (i) Is there any authorization in section 1255(2) for resentencing on the first basis when the misapprehension or mistake of fact comes to light otherwise than "as a result of the department's evaluation of [the inmate's] progress toward a noncriminal way of life"; and (ii) even if so, is the provision for resentencing on the first basis severable from the provision for resentencing on the second basis, which we in the instant case hold violates the Maine Constitution? See 1 M.R.S.A. § 71(8) (1979) (rule of statutory construction on severability).

finding of fact, but a judgmental conclusion from facts. It is a prediction, the judge's best guess at the time, of the appropriate sentence in all the circumstances. Unlike the foundational or evidentiary facts on which the judge's conclusion rests, his sentencing decision cannot be said to be an objective "fact" having an existence independent of the judicial proceeding. Correction of error in the foundational facts found at the time of sentencing is qualitatively different from altering the sentence years later on the basis of the offender's subsequent behavior. In the latter situation, "misapprehension" means no more than misprediction; it has little or nothing to do with the traditional concept of the correction of judicial error.

Both in Maine and in other jurisdictions, trial courts have been recognized as having certain limited authority to correct errors in the foundational facts on which the sentence was based. Even in the absence of statutes, courts have exercised an inherent power to correct a sentence within a short time after its entry. A criminal judgment at common law was said to be still "in the bosom of the court" and modifiable, so long as the offender had not begun to serve his sentence and the term of court in which the judgment had been entered had not yet expired. *See State v. Blanchard*, 156 Me. 30, 52, 159 A.2d 304, 316 (1960). With adoption of our Rules of Criminal Procedure in 1965, terms of court ceased to have any significance in cutting off the jurisdiction of a sentencing court, M.R.Crim.P. 45(c); and thereafter M.R.Crim.P. 35 has expressly permitted a justice to correct a sentence he had entered at any time prior to commencement of its execution. In other jurisdictions, courts have by judicial decision relaxed one or both of the traditional time limits on the inherent judicial power to revise sentences. *See, e.g., State v. Thomson*, 110 N.H. 190, 263 A.2d 675 (1970) (court may review sentence after term of court in which it was imposed has expired, if defendant has not yet begun to serve his sentence); *United States v. Benz*, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931) (court may review sentence after defendant has begun serving his sentence, as long as the term of court in which the sentence was imposed has not expired); *State v. White*, 71 N.M. 342, 378 P.2d 379 (1963) (same); *Hayes v. State*, 46 Wis.2d 93, 175 N.W.2d 625 (1970) (court may review sentence within a year after it is imposed—subsequently modified to 90 days—even though defendant has begun serving the sentence and the term of court has expired).

Those authorities, however, provide no support for the validity under the Maine Constitution of the use of section 1255 to modify a sentence based on the behavior of the offender during incarceration. Such application of the statute duplicates a part of the Governor's power to commute a criminal sentence. The power of commutation is a companion of the executive's pardoning power; it differs from his pardoning power in that it leaves the judgment of guilt intact, only substituting a less severe punishment for the punishment originally decreed. In exercising any power of clemency, the Governor is not limited to the considerations that are permitted to the courts by section 1255(2). Rather, the chief executive, acting for the public welfare and the benefit of the convict, has complete discretion and may exercise his power for whatever reasons he thinks appropriate. *See* 59 Am.Jur.2d *Pardon & Parole* §§ 7, 13, 65 (1971); *Baston v. Robbins*, 153 Me. 128, 135 A.2d 279 (1957); *Hoffa v. Saxbe*, 378 F.Supp. 1221 (D.D.C.1974); *State v. Chase*, 329 So.2d 434, 437 (La.1976); *People v. Herrera, supra; Commonwealth v. Arsenault*, 361 Mass. 287, 291–92, 280 N.E.2d 129, 132 (1972). The court in *Hoffa v. Saxbe* undertook an extensive review of the historical development of the executive clemency power, which was first developed in England. The court noted that

the King's pardon was the sole device for altering punishment according to "the situation and circumstances of the offender" [quoting W. Blackstone, *Commentaries*, book IV at 397 (Cooley, 4th ed. 1899)]. As such the royal pardoning power was in fact a predecessor of the

modern criminal justice devices of probation and parole.

378 F.Supp. at 1228.

■ The power granted by section 1255(2) is not as broad as the executive commutation power, because the court is restricted in the factors that it may consider. Nonetheless, the power to reduce an offender's sentence on the basis of his post-conviction behavior is not part of the traditional judicial power; rather, it is encompassed within the executive commutation power. *See Doyon v. State,* 158 Me. 190, 198–99, 181 A.2d 586, 590, *cert. denied,* 371 U.S. 849, 83 S.Ct. 85, 9 L.Ed.2d 84 (1962) (distinguishing correction of error in trial and sentence, properly within the jurisdiction of the courts, from the executive power of commutation). The Maine Constitution in article V, part 1, section 11, has expressly given the commutation power to the executive, and not to the judiciary. Under article III of the Maine Constitution, that power may be exercised only by the executive branch.

The entry must be:

Superior Court's dismissal of the Department of Corrections' petition for resentencing of Gary Hunter under 17–A M.R.S.A. § 1255 affirmed.

NICHOLS, ROBERTS, CARTER and VIOLETTE, JJ., concurring.

WATHEN, Justice, dissenting.

I must respectfully dissent. In delivering a fatal blow to the second branch of 17–A M.R.S.A. § 1255(2), the majority repeats the error of the Superior Court justice by violating the most basic principle of statutory construction and ignoring the unique characteristics of a protective sentence. Stated simply, the statute has been misinterpreted to create, rather than avoid, constitutional confrontation.

In numerous opinions, this Court has affirmed the obligation to construe and interpret a statute so as to sustain it rather than defeat it. As was stated most recently:

We start from the fundamental precepts that courts will, if possible "construe legislative enactments so as to avoid a danger of unconstitutionality" and that the central purpose of statutory construction is "to save, not destroy." *State v. Davenport,* Me., 326 A.2d 1, 5–6 (1974).

*State v. Crocker,* Me., 435 A.2d 58, 63 (1981). The same fundamental precept has been stated even more explicitly:

The duty of this Court is to determine if these provisions of the Act are susceptible of a reasonable interpretation which would satisfy constitutional requirements. If there is such an interpretation, we are bound to adopt that interpretation as it sustains the statute.

*Portland Pipe Line Corp. v. Environmental Improvement Comm'n,* Me., 307 A.2d 1, 15 (1973). This Court must assume that the legislature, in enacting any law, does so with full knowledge of constitutional restrictions and with an intent to act within those restrictions. *See Martin v. Maine Savings Bank,* 154 Me. 259, 147 A.2d 131 (1958). The presumption which attaches to legislative enactments should lead the judiciary inexorably to accept the reasonable interpretation of an enactment which will uphold the legislative act. The statute presented in the instant case lends itself to such a reasonable interpretation within the bounds of the constitution.

The majority adopts as the only possible interpretation of section 1255(2) that interpretation stated by the Superior Court, namely, the authority to "modify a sentence, after it had been imposed, on the ground of changes in the attitude or behavior of the offender." Such a conclusion overlooks and disregards an alternative "reasonable interpretation" which in my judgment is even more consonant with the express language of the statute and which presents no constitutional infirmity.

One must approach section 1255(2) with an understanding that it was developed as an integral part of a total revision of the laws relating to crime and punishment which resulted in the adoption of the Maine Criminal Code. The advent of determinate

sentencing and the abolition of parole presented the likelihood of longer sentences involving substantially more actual confinement. For the first time the Code identified the goals of sentencing and specifically included protection of the public in addition to factors reflecting the aims of deterrence, rehabilitation and punishment.[1] Since the so-called protective sentence forms the basis for any authority which a court might have under the second branch of section 1255(2), it is necessary to understand how it differs from a sentence designed to serve other aims.

One will not find any comprehensive discussion of protective sentences in the case law of Maine or most other states because of the absence of a system for effective appellate review of sentencing. One of the benefits of full appellate scrutiny would be a decisional discourse and an evolving body of law dealing with the principles of sentencing. *See* M. Frankel, *Criminal Sentences* 75–85 (1973). There is, however, a body of literature in the area of criminal sentencing which provides substantial information concerning the type of sentence referred to in section 1255(2). A protective sentence is defined as serving the aim of incapacitation. The length of the sentence alone incapacitates the defendant from committing any further criminal acts.

> To the extent that the intent of the sentence is purely incapacitative, 'attention is not focused on the reduction of the offender's propensity for future criminal acts; rather the offender is controlled so as to preclude his opportunity for such behavior at least while under the authority of the state.'

M. Gottfredson, D. Gottfredson *Decisionmaking in Criminal Justice*, p. 174 (1980).

A comparative view of the use of this principle of sentencing may be found in N. Walker, *Sentencing In A Rational Society* (1971). The author recounts that at one point in the history of Germany and Britain, certain offenders first served a term of detention appropriate to accomplish retribution for the crime and then went on to serve the prophylactic portion of the sentence designed to incapacitate. The author points out that the common element in most penal codes which provide for such prophylactic sentences is the requirement that there be evidence that the offender is unlikely to respond to ordinary penal measures. The Criminal Justice Act of 1967 in England is summarized by the author and is identified as the latest and most elaborate definition of a class of offenders subject to protective sentencing:

> (i) the offender must have been convicted on at least four separate occasions of any offence punishable with two or more years' imprisonment;
>
> (ii) the convictions must have occurred since his twenty-first birthday;
>
> (iii) they must have taken place in a higher court;
>
> (iv) the custodial sentences imposed must have added up to not less than five years, and included at least one of three years or more or at least two of two years or more;
>
> (v) the offence for which the precautionary sentence is imposed must have been committed within three years of his last conviction or release from custody for an offence punishable with at least two years' imprisonment.

*Supra*, at 133. The author's description of the path leading to increased prominence of protection as a justification for sentencing may aptly describe the experience in Maine:

> As retribution and general deterrence become unfashionable justifications for imprisonment, the emphasis shifts to correction and protection. And when the corrective efficacy—at least of long sentences—begins to be questioned, the only safe ground left is protection. Parallel with these trends can be seen a change in the conception of protective sentences. In the nineteenth century, when most prison sentences were by our standards

---

1. 17–A M.R.S.A. § 1151(1) speaks of "the restraint of convicted persons when required in the interest of public safety."

very long, it was unnecessary to devise special precautionary sentences. As they shortened, a demand was created for longer ones in the case of certain offenders, who were defined either as habitual criminals or as being likely to commit certain particularly objectionable crimes. *Supra,* at 132.

Unlike the English Parliament, the Maine legislature chose not to specify the precise factual basis upon which a prophylactic or protective sentence should be considered. However, the existence and importance of the concept is demonstrated by its prominent inclusion in the general aims of sentencing, and there is no doubt that such prophylactic sentences are imposed by the Superior Court in appropriate circumstances.

Review of authoritative writings on the subject of criminal sentencing and the language of the statute lead me firmly to the opinion that the Maine legislature focused strictly upon the protective sentence in enacting the second branch of section 1255(2). The legislature authorized resentencing only if the sentencing judge found that he had misapprehended the amount of time incapacity was required for societal protection. Such authority would not extend to every criminal sentence of incarceration but would be confined to those sentences which were truly prophylactic. The absence of statutory definition increases the difficulty in objectively identifying such a sentence but does not render it impossible. The offender is one who is deemed to be incorrigible or at least unlikely to respond to ordinary penal measures. His sentence is longer in duration than would be necessary to serve the purposes of deterrence, rehabilitation or punishment. The sentencing judge, to some extent, ignores the needs of the individual defendant and measures the need of society to be protected. The resulting

sentence is for a substantial number of years, usually in excess of five, since any shorter period would hardly serve any legitimate need for protection.[2] It is important to note that since the determination of incorrigibility and the need for protection rests exclusively with the sentencing judge, unguided by statute, only he may know whether protection entered the sentencing equation.

Three factors give rise to the need for a means of error correction: (1) the specific inclusion of societal protection in the general aims of sentencing; (2) determinate sentencing ranging from one day to twenty years for certain offenses; and (3) the abolition of parole. Section 1255(2) is the sole legislative response to what would otherwise be a fertile field for egregious injustice. The almost boundless discretion granted to the sentencing judge in imposing a protective sentence is checked only by that judge's ability and authority to correct errors. This slim thread the majority now removes.

One must look at criminal sentencing as a fluid process encompassing both sentence imposition and correction rather than as a series of independent static events. Such a view not only fulfills the intent of the legislature to provide a means of relief from injustice, it avoids constitutional confrontation. While the majority acknowledges that the legislature may authorize the courts to correct factual errors, it concludes that section 1255(2) cannot reasonably be interpreted to achieve that result. Rather, it is concluded that the statute can only be interpreted as an impermissible attempt to invade the pardon power of the executive branch of government.[3] In my judgment the error in such a construction arises from overreading the following language of the statute: "If, as a result of the department's evaluation of such person's progress toward

---

**2.** It is not certain that the sentence involved in the instant case is protective or prophylactic. Since the Superior Court dismissed the petition, that issue was not aired.

**3.** Given the interpretation espoused herein, the issue of separation of powers does not arise.

There is authority to support the proposition that sentence modification does not impinge upon the pardoning power. *See State v. Nardini,* 21 Cr.L.Rep. 2194, Conn.Sup.Ct., 396 A.2d 447 (1982).

a noncriminal way of life, the department is satisfied that the sentence of the court may have been based upon a misapprehension," it may file a petition. This provision prescribes the administrative preconditions to the filing of a petition but does not describe the factual basis upon which relief could be predicated. The import of the statute is clear. If a defendant's conduct in prison suggests to the satisfaction of the department that the court *may* have misapprehended the necessity for a prophylactic sentence, then a petition may be filed. At that point the sentencing judge, under the terms of the statute, is entitled to consider whether he was acting on the basis of a misapprehension at the time of sentencing. Significantly, the judge is not called upon to consider whether the good conduct of the defendant entitled him to relief from the sentence previously imposed. Rather, he is required to consider once again the decision to impose a prophylactic sentence and determine whether he misapprehended the factual basis upon which it rested. The defendant's "progress toward a noncriminal way of life," having triggered the filing of the petition, does not enter into the determination of error correction.

Finally, the majority rules that there could be no factual error to correct. I would agree that the judge's decision to impose a prophylactic sentence is not itself a finding of fact, but rather a judgmental conclusion based upon facts. I do not agree that the "misapprehension" referred to in section 1255(2) therefore means *no more* than misprediction. Since the sentencing provisions of Maine law afford the judge substantial latitude in considering which facts may persuade him to impose a prophylactic sentence, it is axiomatic that the provision for error correction concerning those foundational facts must be of equal latitude.

I would reverse the Superior Court's dismissal of the petition for modification of Gary Hunter's sentence and remand for the sentencing judge to determine whether the sentence imposed was protective, and if so, whether his decision was based upon factual misapprehension.