STATE OF MAINE *vs.* OMAR POULIN, alias OMAR POOLER.

Somerset.    Opinion March 2, 1909.

*Statutes.  Same Presumed Constitutional.  Same to be Obeyed until Declared Invalid.
Same not Necessarily Void Ab Initio, When Declared Unconstitutional.
Officers De Facto and De Jure.  Public Policy.  Public
Laws 1905, chapter 92, section 8.*

An indictment does not require the signature of the attorney for the State.

Declaring a statute unconstitutional does not necessarily render it void ab initio.

The constitutionality of a statute is to be presumed until the contrary is shown beyond a reasonable doubt.

An office created or authorized by the legislature should be treated as de jure until otherwise declared by a competent tribunal.

The presumption in favor of the constitutionality of a statute is so binding that the public and individuals are bound to treat it as valid, hence it follows that the public and individuals are compelled, by judicial construction, to assume, toward a legislative enactment, precisely the same attitude, whether it be constitutional or unconstitutional.

Every Act of the Legislature, however repugnant to the constitution, has not only the appearance and semblance of authority, but the force of law. It cannot be questioned at the chair of private judgment, and if thought unconstitutional, resisted, but must be received and obeyed as to all intents and purposes as law, until questioned in and set aside by the court.

It is an axiom of practical wisdom, coeval with the development of the common law founded upon necessity, that de facto acts of binding force may be performed under presumption of law.

The de facto doctrine is exotic and was engrafted upon law as a matter of policy and necessity, to protect the interests of the public and individuals, where those interests were involved in the official acts of persons exercising the duty of an office without being lawful officers. It would be unreasonable to require the public to inquire into the title of an officer, or compel him to show title, and these have become settled principles in law.

To protect those who deal with officers, apparently holding office under color of law, in such manner as to warrant the public in assuming that they are officers and in dealing with them as such, the law validates their acts as to the public and third persons, on the ground that as to them, although not officers de jure they are officers in fact, whose acts public policy requires to be construed as valid.

Under the provisions of section 8, chapter 92, Public Laws of 1905, Amos K. Butler was appointed "special attorney of the state" for the county of Somerset. Under the aforesaid statute it was the duty of Mr. Butler, after his appointment, to supercede the attorney for the State for said county, in all prosecutions relating to the law against the manufacture and sale of intoxicating liquors, including his presence with the grand jury presenting the evidence and administering oaths to witnesses. During the time Mr. Butler was acting in his capacity as "special attorney for the state," the defendant was indicted in said county as a common seller of intoxicating liquors, tried and found guilty. The defendant then filed a motion in arrest of judgment alleging in substance the following reasons why the judgment against him should be arrested: 1. Because Mr. Butler was unlawfully present in the grand jury room, and unlawfully aided, assisted, counselled and advised the grand jury in receiving and deliberating upon the evidence. 2. Because the witnesses who testified before the grand jury were not lawfully sworn. 3. Because they were sworn by Mr. Butler who was not authorized by law to administer the necessary oath to the witnesses and that no other oath was administered to them. 4. Because while the grand jury were receiving and considering evidence against the defendant and found and returned the indictment upon which he was convicted, Thomas J. Young was the duly elected and qualified attorney for the State for said county, and was in attendance upon said term of court willing and able to perform his duties with the grand jury in the matter before them, as required by law, and was unlawfully hindered and prevented from attending upon the grand jury. This motion was overruled and sentence was then imposed on the defendant. The real purpose of filing the aforesaid motion was to test the constitutionality of the aforesaid statute. But after the defendant had been indicted, tried, found guilty and sentenced as aforesaid, the aforesaid statute in another and separate proceeding, *State* v. *Butler*, was held to be unconstitutional and without any force of law.

*Held:* That declaring said section 8 unconstitutional did not necessarily end the State's case nor peremptorily require a conclusion in favor of the defendant's motion.

2.  That the office of "special attorney for the state," in said county, should be regarded and treated as de jure, until the same was otherwise declared, and not as invalid ab initio.

3.  That the indictment against the defendant was lawfully found and returned by the grand jury.

On exceptions by defendant. Overruled.

Indictment against the defendant as a common seller of intoxicating liquors, found and returned by the grand jury at the September term, 1908, Supreme Judicial Court, Somerset County. Before being arraigned the defendant moved to quash the indict-

ment, which motion was overruled, to which ruling exceptions were taken and allowed, whereupon the defendant was ordered to plead to the indictment and upon his arraignment pleaded that he was not guilty, and the matter went to the jury. The defendant offered no evidence and a verdict of guilty was returned, whereupon after trial and verdict of guilty and before judgment the defendant moved in arrest of judgment, which motion was also overruled and sentence imposed. To the overruling of this motion the defendant also excepted. The reasons alleged in support of the motion in arrest of judgment were the same as set forth in the motion to quash.

The case is stated in the opinion.

NOTE. In connection with the case at bar, attention is called to *State, by Information,* v. *Butler,* found on page 91 of these reports, where on January 6, 1909, the Law Court declared the statute under consideration in the case at bar, section 8 of chapter 92 of the Public Laws of 1905, to be unconstitutional.

*Amos K. Butler,* Special Attorney, for the State.

*George W. Gower,* for defendant.

SITTING : EMERY, C. J., WHITEHOUSE, SPEAR, CORNISH, BIRD, JJ.

SPEAR, J. The defendant in this case Omar Poulin alias Omar Pooler, was indicted in Somerset county at the September term of court 1908 as a common seller of intoxicating liquors. A plea of not guilty was entered, a trial had, a verdict of guilty rendered and a motion in arrest of judgment seasonably filed. The motion was overruled and sentence imposed. To the overruling of the motion, exceptions were filed and allowed.

This case arises under section 8, chapter 92, Public Laws of 1905, an act authorizing the governor to create the office of special attorney for the State and appoint thereunder an attorney to perform the duties thereof. No question was made that the office was created and that Amos K. Butler was properly appointed and qualified to perform the duties of the office, in accordance with the act of the legislature. It was the duty of Mr. Butler after his appointment, to supercede the attorney for the State for Somerset county,

in all prosecutions relating to the law against the manufacture and sale of intoxicating liquors, including his presence with the grand jury, presenting the evidence and administering oaths to witnesses. He also signed the indictment as special attorney but this act becomes immaterial as the law does not require even the signature of the attorney for the State.  In view of the law and the facts as above appears, the defendant in his motion presented the following reasons why the judgment against him should be arrested.  Briefly stated they are, first, that Mr. Butler was unlawfully present in the grand jury room, and unlawfully aided, assisted, counselled and advised the grand- jury in receiving and deliberating upon the evidence.  Second, because the witnesses who testified before the grand jury were not lawfully sworn.  Third, because they were sworn by Amos K, Butler who was not authorized by law to administer the necessary oath to the witnesses and that no other oath was administered to them.  Fourth, because, while the grand jury were receiving and considering evidence against the respondent and found and returned the indictment upon which he was convicted, Thomas J. Young was the duly elected and qualified attorney for the State for said county ; and was in attendance upon said term of court willing and able to perform his duties with the grand jury in the matter before them, as required by law, and was unlawfully hindered and prevented from attending upon the grand jury.

Section 8, chapter 92, Laws of 1905, under which Mr. Butler was appointed special attorney, is as follows :   "The governor may, after notice to and opportunity for the attorney for the state for any county to show cause why the same should not be done, create to continue during his pleasure, the office of special attorney for the state in such county and appoint an attorney to perform the duties thereof.

"Such an appointee shall, under the direction of the governor, have and execute the same powers now invested in the attorney for the state for such county in all prosecutions relating to the law against the manufacture and sale of intoxicating liquors, and shall have full charge and control thereof ; and shall receive such reasonable compensation for services rendered in vacation and term time

as the justice presiding at each criminal term in the county shall fix, to be allowed in the bill of costs for that term and paid by the county."

The real purpose of filing the motion in arrest of judgment was to test the constitutionality of the above statute. This question has very recently been decided adversely in *State, by Information,* v. *Butler,* 105 Maine, 91.

But this decision does not necessarily end the State's case nor peremptorily require a conclusion in favor of the defendant's motion. Declaring a statute unconstitutional does not necessarily render it void ab initio. It is an axiom of practical wisdom, coeval with the development of the common law, founded upon necessity, that de facto acts of binding force may be performed under presumption of law. There is another rule so uniform in its application that it, too, has become a legal maxim that "all acts of the legislature are presumed to be constitutional." *Lunt's case,* 6 Maine, 412. This rule was confirmed in *Eames* v. *Savage,* 77 Maine, 212, a case in which the plaintiff claimed the statute was made null and void by the Maine Bill of Rights and the Constitution of the United States, but the court said: "The presumption is the other way, in favor of the validity of the statute, and it is a presumption of great strength. All the justices and writers agree upon this. Chief Justice Marshall in *Fletcher* v. *Peck,* 6 Cranch. 87, says 'that' to overturn this presumption the justices must be convinced and, the conviction must be clear and strong.' Judge Washington in *Ogden* v. *Saunders,* 12 Wheaton, 270, declared 'that if he rested his opinion on no other ground than a doubt, that alone would be a satisfactory vindication of an opinion in favor of the constitutionality of a statute.' Chief Justice Mellen in *Lunt's case,* 6 Maine, 413, 'the court will never pronounce a statute to be otherwise (than constitutional) unless in a case where the point is free from all doubt.' This strong presumption is to be constantly borne in mind, in considering the question here presented."

The same rule was reiterated in *Soper* v. *Lawrence,* 98 Maine, 268, in which it is held: "Power of the judicial department of the government to prevent the enforcement of a legislative enactment

by declaring it unconstitutional and void, is attended with responsibilities so grave that its exercise is properly confined to statutes that are clearly and conclusively shown to be in conflict with the organic law. The constitutionality of a law is to be presumed until the contrary is shown beyond a reasonable doubt." See also cases cited.

It logically follows from the rule enunciated in these cases that an act of the legislature is to be regarded as valid until otherwise declared by the court. Directly in point, is *State* v. *Carroll*, 38 Conn. 449, a case undoubtedly presenting the most comprehensive and critical analysis upon the question of de facto offices and officers, to be found in the history of the common law. "Every law of the legislature, however repugnant to the Constitution, has not only the appearance and semblance of authority, but the force of law. It cannot be questioned at the bar of private judgment, and, if thought unconstitutional, resisted, but must be received and obeyed as to all intents and purposes law, until questioned in and set aside by the court. This principle is essential to the very existence of order in society. It has never been questioned by any jurist to my knowledge."

These citations clearly demonstrate the strength of the presumption in favor of the constitutionality of legislative enactments when under construction. How absolutely, then, must it prevail in establishing the right and duty of the public and the individual, to act upon and obey them while in force.

The de facto doctrine is exotic, and was engrafted upon the law, as a matter of policy and necessity, to protect the interests of the public and individuals, where those interests were involved in the official acts of persons exercising the duty of an office without being lawful officers. It would be unreasonable to require the public to inquire into the title of an officer, or compel him to show title, and these have become settled principles in law. To protect those who deal with officers apparently holding office under color of law, in such manner as to warrant the public in assuming that they are officers and in dealing with them as such, the law validates their acts as to the public and third persons, on the ground that as to

them although not officers de jure they are officers in fact whose acts public policy requires to be construed as valid. This was not because of any character or quality conferred upon the officer, or attached to him by reason of any defective election or appointment, but as a name or character given to his acts by the law for the purpose of making them valid. This doctrine is thoroughly established and, as said in *State* v. *Carroll*, supra; "If you find a man executing the duties of an office, under such circumstances of continuance, reputation or otherwise, as reasonably authorize the presumption that he is the officer he assumes to be, you may submit to or employ him without taking the trouble to inquire into his title, and the law will hold his acts valid as to you by holding him to be, so far forth, an officer de facto." There is little if any, judicial conflict as to the existence, scope and meaning of the de facto doctrine. Hence the discussion up to this point has been general and confined to the reasons for the introduction of the doctrine.

But now we advance a step and come to the vital issue: "Can there be a de facto officer without a de jure office? Upon this point courts of the highest character differ. The question is new in this State, but not without precedent elsewhere. It therefore becomes our care to meet the issue, and apply the reasons underlying the birth of the de facto doctrine, in an effort to deduce a rule applicable to the case at bar. Generally speaking the de facto doctrine has been applied to a de facto officer in a de jure office, that is, an office existing by virtue of a valid law or statute. In this case, however, the statute authorizing the creation of the office and the appointment of a special attorney to fill it, has been declared unconstitutional and hence not a de jure office in the sense here used.

Was then the incumbent of this office, who appeared in the grand jury room and administered the oath to the witnesses, a de facto officer so that his executed acts became binding upon the State, the public and individual, who had occasion to deal with him in his assumed capacity? Upon this legal issue appear two distinct, well defined, lines of decisions diametrically opposed to each other. Follow one or the other we must. Follow either we may. Our

concern is to discover which the better coincides with the reason for, and the purpose of, the de facto doctrine.

And we may say here, before proceeding to a discussion of these cases, that we are unable to discover any difference, in reason, for declaring an officer to be de facto, whether he holds a de facto or de jure office, if he has occupied it with the usual insignia of a de facto officer. The authorities are in harmony that the de facto doctrine was invented to deal with effects, not with causes. The effects only can be reached. The causes cannot. The official acts are accomplished. If the effects are alike it is immaterial that the causes differ. The effects, whether from a de jure or de facto office, are alike. Hence, the acts of the officer occupying either position should be declared de facto.

The court is of the opinion that an office created or authorized by the legislature should be treated as de jure, until otherwise declared by a competent tribunal. It is certainly true that, under the great weight of authority as established by our own court, the presumption in favor of the constitutionality of a statute is so binding that the public and individuals are bound to treat it as valid. Hence, it follows that the public and individuals are compelled, by judicial construction, to assume, toward a legislative enactment, precisely the same attitude, whether it be constitutional or unconstitutional. And it also appears, that the very object of introducing the de facto doctrine is to protect the public and individual, in dealing with a public officer, who assumes to occupy an office and whose authority they are bound to respect. These are precisely the circumstances involved in the case before us. To the public and the individual, the special attorney was the attorney for the State to the extent of his powers. He was so regarded by the executive and legislative departments of the State. He was so recognized by the courts. He compelled the public and the individual to acknowledge his authority. The people relied upon him to enforce the law. Individual liberty was obliged to submit to the administration of his office. Judicial notice of their own records show, that fines have been imposed and imprisonment inflicted by the courts, upon prosecutions from his office. If it is possible to find a case presenting stronger reasons for

applying the de facto doctrine, we have been unable to discover it. Can it be possible that an individual who has been indicted, under precisely the same conditions in which the indictment before us was found, if tried, convicted and sentenced, cannot plead that he has once been put in jeopardy? The very object of the de facto doctrine is to say, that he could so plead and be protected from any further prosecution, on the ground that he had a right to regard the office, the officer and his administration of the office, as legal. And it should be here further observed that the de facto doctrine has been applied, on the ground that the public and the individual had a right to presume the legality of official acts. But here the public and the individual had no choice, but were compelled to recognize the office and the officer. Under the circumstances of this case we do not hesitate to declare, that the office of special attorney should be regarded as de jure, until otherwise declared, and not as invalid ab initio. Not only upon reason but upon authority this should be done. A fair analysis of the rule laid down in *Eames* v. *Savage,* *Soper* v. *Lawrence* and *State* v. *Carroll,* supra, sustain this conclusion. The weight of authority also supports it as a brief analysis of the two leading, opposing opinions referred to will sufficiently show.

Upon this issue whether there can exist a de facto officer without a de jure office, Justice Field in *Norton* v. *Shelby County,* 118 U. S. 426, in an exhaustive opinion, adopted without division, seeks to establish the negative of the question, and Chief Justice Gummere of New Jersey in *Lang* v. *Mayor, etc., of City of Bayonne,* N. J. L. 68 A. R. page 90, in an equally elaborate opinion, also adopted without division, holds the affirmative. Justice Field states the de facto doctrine practically as above defined, and then proceeds to say: "But the idea of an officer implies the existence of an office which he holds. It would be a mis-application of terms to call one an officer who holds no office, and a public office can exist only by force of law. . . . Their (counsels') position is, that a legislative act, though unconstitutional, may in terms create an office, and nothing further than its apparent existence is necessary to give validity to the acts of its assumed incumbent. . . .

It is difficult to meet it by any argument beyond this statement. An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation as inoperative as though it had never been passed."

Chief Justice Gummere declares precisely the opposite. "A statute creating an office with prescribed duties has the force of law until condemned as unconstitutional by the courts, and in the meantime the incumbent is an officer de facto, and his acts are as potent so far as the public is concerned as are the acts of any de jure officer."

In attacking the reasoning of Justice Field, he says: "Notwithstanding the great weight which the opinion of so distinguished a jurist carries with it, notwithstanding that *Norton* v. *Shelby County* has been frequently cited with approval in other jurisdictions, I am unable to accept as sound the doctrine upon which it is rested, namely, that an unconstitutional law is void ab initio, and affords no protection for acts done under its sanction."

It is interesting to note in analyzing these two leading cases that each eminent jurist seeks to trace the source of his opinion to the same source,— *State* v. *Carroll*, 38 Conn. 449. Each expresses his regard for the great ability of the opinion, and each cites it as authority. But it seems clear that the whole intention of this masterly resume by Chief Justice Butler is in support of the contention declared in *Lang* v. *Mayor*, *etc.* Chief Justice Butler defines an officer de facto under four heads, only the last of which is apposite, as follows: "An officer de facto is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons, where the duties of the officer were exercised, *fourth*, under color of an election or appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such. Justice Field interprets this last definition as follows: "Of the number of cases cited by the Chief Justice, none recognizes such a thing as a de facto office, or speaks of a person as a de facto officer, except when he is the incumbent of a

de jure office. The fourth head refers not to the unconstitutionality of the act creating the office, but to the unconstitutionality of the act by which the officer is appointed to the office legally existing. That such was the meaning of the Chief Justice is apparent from the cases cited by him in support of the last position, to some of which reference will be made."

Chief Justice Gummere meets this interpretation, saying: "The Carroll case is admittedly a leading one upon the question of what is essential to constitute a person a de facto officer. It is referred to by Justice Field as ' a landmark of the law,' ' an elaborate and admirable statement of the law,' and no one can read it without concurring in this encomium upon it. The Chief Justice having first declared that ' an officer de facto is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and of third persons, where the duties of the office are exercised under color of an election or appointment by or pursuant to a public unconstitutional law before the same is adjudged to be such,' refers to numerous cases, the reasoning of which, in his judgment, supports this proposition. Justice Field perceiving that this statement of what constitutes an officer de facto, if accepted as broadly as it is made, militated against the conclusion which he himself reached, points out that none of the cases cited by Chief Justice Butler ' recognizes such a thing as a de facto office, or speak of a person as a de facto officer, except when he is the incumbent of a de jure office.' Chief Justice Butler did not refer to the cases which he cited as decisions upon the very point embraced in his proposition, but merely for the purpose of showing that by their reasoning they supported it." The above clear, unambiguous and comprehensive quotation of what constitutes an officer de facto and the force of his acts, construed "according to the common meaning of the language," seems a sufficient answer to Justice Field's construction, independent of the judgment of so eminent a jurist as the Chief Justice of New Jersey. But further analysis of the Carroll case will conclusively show that Chief Justice Gummere in his interpretation of the opinion is accurate. It will

be observed that *Brown* v. *O'Connell*, 36 Conn. 432, was a case to the effect that a law passed by the legislature cannot have color of authority unless it appears prima facie to be law and that it cannot so appear if it is manifestly repugnant to the constitution. This case seems to present the precise point involved in this discussion, namely, whether an act of the legislature is to be regarded as law until it is otherwise declared, or whether it is incumbent upon the public and the individual to determine its constitutionality; and, if they neglect to do so, or are erroneous in their conclusion, whether they must act under the statute at their peril. Justice Field says that if they fail to properly interpret such an act, or act under it without any attempt to construe it, "it affords no protection; creates no office; it is, in legal contemplation as inoperative as though it had never been passed." Now Chief Justice Butler in discussing *Brown* v. *O'Connell*, says: "The inferences to be drawn from these assumptions necessarily is, that a manifestly unconstitutional law is without any force whatever, and that whether manifestly unconstitutional or not, and whether it have the appearance and force of law or not, are questions for the private judgment of the citizen." This is precisely what Mr. Justice Field claims to be the law. But the Chief Justice goes on and absolutely negatives this position saying: "If these assumptions were true they would dispose of this case; but they are all novel impressions and fundamentally erroneous." But this is not all. He proceeds to positively enunciate the rule which not only negatives the conclusion of Justice Field but is a perfect precedent for the doctrine asserted in *Lang* v. *Mayor*, etc., and for the conclusion at which we arrive. "Every law of the legislature, however repugnant to the constitution, has not only the appearance and semblance of authority, but the force of law. It cannot be questioned at the bar of private judgment, and, if thought unconstitutional, resisted, but must be received and obeyed as to all intents and purposes as law, until questioned in and set aside by the courts. This principle is essential to the very existence of order in society." Then to remove any possible doubt as to his meaning, he specifically applies the doctrine to the office itself. "If then the law of the legislature which creates an office,

and provides an officer to perform its duties, must have the force of law until set aside as unconstitutional by the courts, it would be absurd to say that an officer so provided had no color of authority." A casual analysis is conclusive that it is the act creating the office "that must have the force of law." There can be no reasonable doubt that the great authority of the *Carroll* case sustains the contention of this opinion that there may exist a de facto office as well as a de facto officer. The *Lang* case in discussing the distinction attempted to be made between a de facto and de jure office also fully confirms our view. "But this it seems to me is a mere verbal distinction. The fact remains that the acts of an incumbent of such so called offices are as potent, so far as the public is concerned, as are the acts of any de jure officer who performs a duty of a legally existing office. In my judgment the same public policy which requires obedience from the citizen to the provisions of the public statute which creates a municipality, and provides for its government, even though unconstitutional, so long as it has not received judicial condemnation, equally justifies obedience to every other law which the legislature has seen fit to enact, until such has been judicially decided to be invalid."

It may be said that the office of special attorney in the case before us was not created by the legislature itself but by authority conferred by the legislature upon the governor. But we confess our inability to indulge in the hypercritical refinement necessary to make any distinction either in law or reason. As bearing upon the question herein considered, reference may be had to *Brown* v. *Lunt*, 37 Maine, 453; *Hooper* v. *Gordon*, 48 Maine, 79; In re *Ah Li*, 5 Fed. Rep. 899; *Leach* v. *The People*, 122 Ill. 42Q; 12 N. E. 726; *Meggs Township* v. *Jamison*, 55 Pa. 468; *Diggs* v. *State*, 49 Ala. 311; *Parker* v. *Baker*, 9 Paige, 28; Cyc. 29, 1389, and also the cases cited and analyzed in *State* v. *Carroll*, 38 Conn. 449, 68 Atl. 90.

The full measure of reason and the great weight of authority are precedents for applying the de facto doctrine to the case at bar.

*Exceptions overruled.*

*Judgment for the State.*