David BOSSIE, et al.

v.

STATE of Maine.

Supreme Judicial Court of Maine.
Argued Sept. 17, 1984.
Decided Feb. 27, 1985.

Sherrilynn S. Smith (orally), Waterville, for plaintiff.

Charles K. Leadbetter (orally), Anita M. St. Onge, Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

On this consolidated appeal arising from an order of the Superior Court (Kennebec County) denying six consolidated Petitions for Post-Conviction Review, three of the six defendants below appeal to the Law Court pursuant to 15 M.R.S.A. § 2131 (Supp. 1983–1984) and M.R.Crim.P. 76. On appeal, petitioners contend that the Superior Court erred in deciding that a recently enacted statutory formula for the calculation of good-time reductions in prior sentences is an unconstitutional exercise of legislative power in conflict with the exclusive power of the executive to commute sentences. We agree with the order of the Superior Court and deny the appeal.

The three petitioners, David Bossie, Matthew R. Downing, and Kenneth D. Rancourt were convicted and placed in custody when the calculation of "good-time" reductions (for faithfully observing rules and requirements) in their sentences was controlled by 17–A M.R.S.A. § 1253(3–A) (as last amended by P.L.1977, ch. 510, § 81).[1] Under this section, each defendant received credit for good-time at the end of each thirty day period of incarceration. The effect of the method of calculation under section 1253(3–A) was potentially to reduce a prisoner's total sentence by ¼, 40 days credit for 30 days served. Section 1253(3–A) was repealed and replaced by 17–A M.R.S.A. § 1253(3) (Supp.1983–1984) (as amend-

1. 17–A M.R.S.A. § 1253(3–A) (as last amended by P.L.1977, ch. 510, § 81) provides:

Each person sentenced, on or after January 1, 1978, to imprisonment for more than 6 months shall earn a reduction of 10 days from his sentence for each month during which he has faithfully observed all the rules and requirements of the institution in which he has been imprisoned. Each month the supervis-ing officer of each institution shall cause to be posted a list of all such persons who have earned reductions from their sentences during the previous month. If any such person does not earn all of his reduction from his sentence in any month, a notation of such action shall be entered on a cumulative record of such actions in the person's permanent file.

ed by P.L.1983, ch. 456).[2] Under the new method of calculating good-time, 10 days per month is credited up front before the time is actually served. The effect of section 1253(3) is potentially to reduce sentences by about ⅓, 30 days credit for every 20 days served. Although the effective date of amended section 1253(3) was October 1, 1983, the final sentence of section 1253(3) makes the subsection applicable to persons committed to the custody of the Department of Corrections before the effective date, as to the portions of their sentences remaining to be served after the effective date.

Petitioners initiated post-conviction review proceedings claiming that they were entitled to good-time reductions calculated in accord with section 1253(3) from the commencement date of their sentences. They alleged that the method used by the Maine Department of Corrections to calculate their good-time credits pursuant to section 1253(3) violated their rights to equal protection of the laws under both the United States and Maine Constitutions.[3] The Superior Court declined to address the merits of petitioners' contentions and held that the last sentence of section 1253(3) (making the section applicable to the portion of sentences remaining to be served after the effective date) was an unconstitutional legislative encroachment on the executive's commutation power. The Superior Court held that section 1253(3–A) remained in effect for all persons sentenced before October 1, 1983.

## I.

■ Our analysis begins with the basic principle of statutory construction that this Court is bound to avoid an unconstitutional interpretation of a statute if a reasonable interpretation of the statute would satisfy constitutional requirements. *See State v. Crocker*, 435 A.2d 58, 63 (Me.1981); *State v. Davenport*, 326 A.2d 1, 5–6 (Me.1974); *Portland Pipe Line Corp. v. Environmental Improvement Comm'n*, 307 A.2d 1, 15 (Me.1973). The petitioners assert that the last sentence of section 1253(3) reasonably could be interpreted to be a mere exercise of the legislature's traditional power to compute the length of sentences prospectively rather than a commutation of sentences already imposed. The petitioners take an overly technical approach to statutory construction.

As a practical matter, good-time credits have the undeniable effect of reducing the length of sentences. *See Weaver v. Graham*, 450 U.S. 24, 31–32, 101 S.Ct. 960, 965–966, 67 L.Ed.2d 17 (1981). Thus, good-time credits are an integral part of the sentence, and changing the calculation of good-time changes the effective length of a sentence.[4] *See id* at 32, 101 S.Ct. at 966; *State v. Blanchard*, 156 Me. 30, 50–51, 159 A.2d 304, 315 (1960). Because good-time credits affect the lengths of sentences and because the legislature purported to increase the amount of good-time credits available for prisoners already in the custo-

2. 17–A M.R.S.A. § 1253(3) (Supp.1983–1984) (as amended by P.L.1983, ch. 456) provides:

   Beginning October 1, 1983, each person sentenced, to imprisonment for more than 6 months shall be entitled to receive a deduction of 10 days per month calculated from the first day of his delivery into the custody of the department, to include the full length of the unsuspended portion of his sentence, for observing all the rules of the department and institution, except this provision shall not apply to the suspended portion of a person's sentence pursuant to split sentences under section 1203. All persons committed to the custody of the Department of Corrections prior to the effective date of this subsection shall

have these provisions applied prospectively to the portion of their sentences remaining to be served.

3. The Department of Corrections interprets the phrase "the portion of their sentence remaining to be served" to mean the portion of their sentence remaining to be served after deducting tentative good-time credits assigned under pre-October 1, 1983 law.

4. 17–A M.R.S.A. § 1254(1) (1983) provides:

   An imprisoned person shall be unconditionally released and discharged upon the expiration of his sentence, minus the deductions authorized under section 1253.

dy of the Department of Corrections at the effective date of the statute, section 1253(3) shortened (commuted) the lengths of existing sentences and did not merely change the computation of sentences to be imposed.

Article V, part 1, section 11 of the Maine Constitution grants the Governor the power to commute sentences. The legislature has no explicit constitutional authority in this area. Although the petitioners recognize that article III, section 2 of the Maine Constitution provides for a strict separation of powers between the three branches of government, the petitioners contend that even if section 1253(3) constitutes a legislative commutation of sentences, the separation of powers provisions of the Maine Constitution do not preclude the legislature from acting in this area.

■ In *State v. Hunter*, 447 A.2d 797, 803 (Me.1982), a case declaring unconstitutional a statute providing for judicial resentencing, we said "that the power to reduce an offender's sentence on the basis of his post-conviction behavior ... is encompassed within the executive's commutation power." Furthermore, the *Hunter* Court explained that because article III, section 2 explicitly requires that no one person exercise the powers of more than one of the three branches of government, separation of powers issues must be dealt with in a formal rather than functional manner. The resulting test under the Maine Constitution is a narrow one: "has the power in issue been explicitly granted to one branch of state government, and to no other branch? If so, article III, section 2 forbids another branch to exercise that power." *State v. Hunter*, 447 A.2d at 800. The statute before us violates the constitutional prohibition.

Petitioners seek to distinguish *State v. Hunter* on the ground that the judiciary's power to commute sentences was there involved, while this case concerns the legislature's power to commute sentences. Because of the legislature's traditional authority to establish the length of sentences

for offenses committed in the future and because legislative power is defined by limitation and not by grant, the petitioners contend that the constitutional grant of the power to commute to the executive does not eliminate the legislature's residual amnesty power. Petitioners argue that because of the absence of an explicit restriction on the legislature's general amnesty power, such power may be exercised by the legislature as long as its exercise does not interfere with the executive's commutation power. *See Baston v. Robbins*, 153 Me. 128, 129, 135 A.2d 279, 281 (1957) (art. V, pt. 1, § 11 prevents the legislature from controlling, regulating, or interfering with Governor's pardoning powers).

■ Even if the legislature does have a general amnesty power, something we do not decide, the legislature's power could not extend to the commutation of sentences, an area explicitly and exclusively granted to the executive. *See* Me. Const. art. V, pt. 1, § 11; *State v. Hunter*, 447 A.2d at 800, 803. The very fact of a branch other than the executive branch acting to commute sentences is an interference with the executive's explicit and exclusive grant of the commutation power. *See* Me. Const. art. III, § 2.

## II.

■ The petitioners next argue that section 1253(3) does not interfere with the Governor's exclusive power to commute sentences because the Governor's signature on the legislation constituted a general commutation rather than the ultimate step in the legislative process. The legislative history of section 1253(3) reveals, however, that the legislature never intended the statute to be an alternative method of applying to the Governor for a reduction in sentence. Nor is there any evidence that the Governor intended that his signature would be a blanket exercise of his commutation power, rather than an exercise of his duty under article IV, part 3, section 2 either to sign into law or to veto legislation presented to him from both houses of the legislature. A

statutory enactment does not lose its status as an act of the legislature merely because the Governor signs the bill into law.

### III.

Finally, the petitioners assert that the state is estopped from challenging the constitutionality of section 1253(3). Their contention is without merit. The law of Maine is in accord with the general rule that when the legislature acts in its governmental or sovereign capacity, the doctrine of estoppel does not apply. *John Donnelly & Sons v. Maller*, 453 F.Supp. 1272 (D.Me.), *rev'd on other grounds* 639 F.2d 6, *aff'd* 453 U.S. 916, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981).

The entry must be:

Judgment affirmed.

All concurring.