Robert **CHESTNUT**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued March 12, 1987.
Decided April 29, 1987.

Jeffrey L. Hjelm (orally), Vafiades, Brountas & Kominsky, Bangor, George F. Terry, IV, Bangor, for plaintiff.

James E. Tierney, Atty. Gen., Charles K. Leadbetter (orally), Joseph A. Wannemacher, Asst. Attys. Gen., Augusta, for the state.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, SCOLNIK and CLIFFORD, JJ.

CLIFFORD, Justice.

Robert Chestnut appeals from a judgment of the Superior Court, Penobscot County, denying his consolidated petition for post-conviction relief filed pursuant to 15 M.R.S.A. §§ 2121–2132 (Supp.1986) and M.R.Crim.P. 65–73A. Chestnut contends, *inter alia*, that the revocation of previously awarded good time credits by the Department of Corrections violated his constitutional rights. We disagree and affirm the judgment.

## I.

The petitioner was sentenced on October 6, 1967, to a term of one to ten years for a conviction of the crime of indecent liberties in violation of 17 M.R.S.A. § 1951 (1963). As a result of his conduct during his third attempt on parole, which included several years outside the jurisdiction of this state, Chestnut is not yet eligible for discharge unless he succeeds in this appeal. At the time of his sentencing, good time credits were computed pursuant to 34 M.R.S.A. § 705 (1965),[1] which allowed a deduction of seven days per month from the inmate's sentence, plus two additional days per month for meritorious conduct. On May 1, 1976, good time credits were increased

---

1. Section 705 provided in pertinent part:

   Each convict, whose record of conduct shows that he has faithfully observed all the rules and requirements of the State Prison, shall be entitled to a deduction of 7 days a month for the minimum term of his sentence, commencing on the first day of his arrival at the State Prison. An additional 2 days a month may be deducted from the sentence of those convicts who are assigned duties outside the prison walls or security system, or those convicts within the prison walls who are assigned to work deemed by the Warden of the State Prison to be of sufficient importance and responsibility to warrant such deduction.... P.L.1965, ch. 210 (effective September 3, 1965), *repealed and replaced* by P.L.1975, ch. 499, § 58 (effective May 1, 1976).

from seven to ten days per month up front pursuant to 17–A M.R.S.A. § 1254(3) (P.L. 1975, ch. 740, § 120, effective May 1, 1976).[2] The petitioner was given the opportunity to have good time credits computed retroactively on the basis of section 1254(3) and elected to do so, receiving additional good time credits retroactive to the date on which he was sentenced.

In 1985, we held unconstitutional the computation of good time credits under 17–A M.R.S.A. § 1253(3) (Supp.1983) (as amended by P.L.1983, ch. 456, § 3 (effective September 23, 1983)),[3] which permitted a deduction of ten days per month as it applied to persons committed to the Department of Corrections prior to its effective date. *Bossie v. State*, 488 A.2d 477 (Me.1985). In *Bossie*, we found section 1253(3) to be an unconstitutional exercise of legislative power in conflict with the exclusive power of the executive to commute sentences, in violation of the separation of powers provision of the Maine Constitution, art. V, pt. 1, § 11. *Id.* at 480.

The Department of Corrections, apparently acting in reliance on an opinion of the Maine Attorney General dated March 12, 1985, interpreting *Bossie*, determined that the petitioner was not entitled to the additional good time credits that had been awarded to him as calculated under section 1254(3). Instead, the Department concluded that the petitioner's good time credits should be determined pursuant to 34 M.R.S.A. § 705 (1965), the statute in effect at the time he was sentenced. The Department therefore withdrew the additional good time beyond that permitted by section 705.

The petitioner filed two petitions for post-conviction relief, which were consolidated by court order, and dismissed all claims except those with respect to the computation of good time credits. The parties later filed the following stipulation in the consolidated cases in lieu of a testimonial hearing:

(1) The Petitioner was sentenced on October 6, 1967 to a term of one to ten years.

(2) At some point after May 1, 1976, the Department of Corrections offered the Petitioner the opportunity to elect to have good time computed retroactively, on the basis of 17–A M.R.S.A. § 1254(3) (1976) (effective May 1, 1976), which increased good time from seven days per month up front to ten days per month up front. The Petitioner elected to do so.

(3) Following the issuance by the Law Court of its opinion in *Bossie v. State*,

---

2. Section 1254(3) provided:

All persons in the custody of the Bureau of Corrections pursuant to a sentence imposed under the law in effect prior to the effective date of this code shall be released and discharged according to the law as it was in force prior to the effective date of this code and such law shall continue in force for this purpose as if this code were not enacted; provided that any such person who is entitled to a deduction of 7 days a month from his sentence under the provisions of Title 34, section 705, may elect to have 10 days a month deducted instead of 7. Any such election shall apply to the entire sentence, including that portion of the sentence served prior to the effective date of this code.

P.L.1975, ch. 740, § 120 (effective May 1, 1976), *repealing* P.L.1975, ch. 499, § 1. The present version of section 1254(3) provides:

All persons in the custody of the Department of Corrections pursuant to a sentence imposed under the law in effect prior to the effective date of this code shall be released and discharged according to the law as it was in force prior to the effective date of this code

and such law shall continue in force for this purpose as if this code were not enacted. 17–A M.R.S.A. § 1254(3) (Supp.1986). Our decision in this case, however, affects only the proviso and final sentence of P.L.1975, ch. 740, § 120, the statute in effect at the time the petitioner received the additional good time credits from the Department of Corrections.

3. Section 1253(3) provided:

Beginning October 1, 1983, each person sentenced to imprisonment for more than 6 months shall be entitled to receive a deduction of 10 days per month calculated from the first day of his delivery to the custody of the department, to include the full length of the unsuspended portion of his sentence, for observing all the rules of the department and institution, except this provision shall not apply to the suspended portion of a person's sentence pursuant to split sentence under section 1203. All persons committed to the custody of the Department of Corrections prior to the effective date of this subsection shall have these provisions applied prospectively to the portion of their sentences remaining to be served.

488 A.2d 477 (Me.1985), the Department of Corrections determined that the Petitioner's good time was to be calculated on the basis of 34 M.R.S.A. § 705 (1965), which was in effect at the time the sentence was imposed on the Petitioner. The Department of Corrections also determined that the Petitioner was not entitled to the additional good time to which he had been credited through the application of the 1976 law. The Petitioner, by that time, had already been credited with good time pursuant to the 1976 provision.

(4) Persons sentenced before May 1, 1976, but who elected to and did receive good time credits pursuant to 17-A M.R.S.A. § 1254(3) (1976) and who were discharged from their sentences between May 1, 1976 and the issuance of the Law Court's ruling in *Bossie v. State*, have not been required to serve the additional time based on a recalculation of their sentence pursuant to prior statutes allowing [fewer] good time credits.

(5) On October 7, 1967, the Petitioner began his sentence of one to ten years imposed in the underlying proceeding, Docket Number 2266 (Superior Court, Penobscot County). On July 26, 1968, the Petitioner was paroled. On September 17, 1968, a parole violator warrant was issued. On December 20, 1968, following a hearing the Petitioner was found in violation of his parole and his parole was revoked.

On April 28, 1969, the Petitioner was paroled. On August 22, 1969, a parole violator warrant was issued. On May 20, 1971, a hearing was held and the Petitioner was found to be in violation and his parole was revoked.

On February 1, 1972, the Petitioner was paroled. On May 27, 1972, the Petitioner was apprehended by New York authorities, pursuant to a warrant dated March 22, 1972. On June 10, 1982, the Petitioner was returned to the custody of the Department of Corrections.

The Superior Court denied the consolidated petitions and the petitioner appealed. We issued a certificate of probable cause pursuant to 15 M.R.S.A. § 2131 (Supp.1986).

II.

■ We find the proviso and final sentence of 17-A M.R.S.A. § 1254(3) (P.L.1975, ch. 740, § 120) to be fatally defective for the same reasons we found the statute in *Bossie* unconstitutional. In *Bossie*, we noted that, as a practical matter, good time credits have the effect of reducing the length of sentences, and, as such, are an integral part of the sentence. *Id.*, 488 A.2d at 479. Section 1253(3) (the statute we interpreted in *Bossie; see supra* note 3) did more than affect the computation of sentences yet to be imposed, operating to commute the lengths of existing sentences:

> Because good-time credits affect the lengths of sentences and because the legislature purported to increase the amount of good-time credits available for prisoners already in the custody of the Department of Corrections at the effective date of the statute, section 1253(3) shortened (commuted) the lengths of existing sentences and did not merely change the computation of sentences to be imposed.

*Id.* at 479–80. Because the authority to commute sentences is vested exclusively in the executive branch, *see* Me. Const. art. V, pt. 1, § 11,[4] and because article III, section 2 of the Maine Constitution[5] provides for a strict separation of powers among the

---

**4.** Article V, part 1, section 11 of the Maine Constitution provides:

[The Governor] shall have power to remit after conviction all forfeitures and penalties, and to grant reprieves, commutations and pardons, except in cases of impeachment, upon such conditions, and with such restrictions and limitations as may be deemed proper, subject to such regulations as may be provided by law, relative to the manner of applying for pardons. Such power to grant reprieves, commutations and pardons shall include offenses of juvenile delinquency.

**5.** Article III of the Maine Constitution provides:

Section 1. The powers of this government shall be divided into three distinct departments, the legislative, executive and judicial.

Section 2. No person or persons belonging to one of these departments, shall exercise any of the powers properly belonging to either of the others, except in the cases herein expressly directed or permitted.

three branches, *see State v. Hunter*, 447 A.2d 797, 799–800 (Me.1982), a legislative enactment, such as section 1253(3), that operates to effect a commutation of an existing sentence will be struck down as an unconstitutional violation of the separation of powers. *Bossie v. State* 488 A.2d at 480; *see also Gilbert v. State*, 505 A.2d 1326, 1328 (Me.1986).

The same reasoning in *Bossie* applies to the statute before us, section 1254(3). *See supra* note 2. That provision, like section 1253(3), operates to shorten petitioner's 10–year sentence, achieving a sentence reduction equivalent to a commutation. More-over, the present statute would permit an even greater employment of the commutation power, in that it purports to apply the sentence reduction "to the entire sentence," whereas the statute in *Bossie* purported to apply prospectively only to the portion of the sentence "remaining to be served." Because section 1254(3) (P.L. 1975, ch. 740, § 120) constitutes a legislative commutation of sentences, we find that provision unconstitutional.

### III.

■ The petitioner nevertheless contends that the Department's revocation of the good time credits that he received on the basis of the statutory provision we now strike down violated his constitutional rights. The Superior Court found no constitutional violation in the revocation of those credits. After examining the post-conviction review justice's findings for clear error, *see State v. Toussaint*, 464 A.2d 177, 179 (Me.1983), we agree that the revocation worked no constitutional infringement.

There was no violation of the petitioner's procedural due process rights. We note that "the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison." *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974); *see also Hewitt v.*

*Helms*, 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983); *Clark v. Commissioner of Corrections*, 512 A.2d 327, 329 (Me.1986). In accordance with *Wolff*, however, we have stated that although good time credits may be withdrawn at the discretion of the warden, the statutory allowance for the accumulation of those credits creates an expectation in the inmate that he will be able to earn such credit, and that the inmate's interest is entitled to procedural due process protection. *Carlson v. Oliver*, 372 A.2d 226, 229 (Me.1977); *see also* Annotation, *Withdrawal, Forfeiture, Modification or Denial of Good-Time Allowance to Prisoner*, 95 A.L.R.2d 1265, § 3 (1964 & Later Case Service, 1983). In *Carlson*, the prisoner was deprived of good time credited under a *valid* statutory provision as a disciplinary sanction imposed by prison administrators. Here, however, the petitioner was awarded additional good time credits on the basis of a statute we now find to be *invalid*. Although "[d]eclaring a statute unconstitutional does not necessarily render it void ab initio," *State v. Poulin*, 105 Me. 224, 228, 74 A. 119, 121 (1909),[6] because the statutory provision under which the Department purported to act in granting good time credits was unconstitutional, the Department had no power to grant those credits in the first place. Moreover, a hearing would not have been productive in that it would have done nothing to advance the merits of Chestnut's claim.

■ We also find the petitioner's equal protection claim to be without merit. The equal protection clause of the fourteenth amendment "nullifies only State action which produces the irrational—the arbitrary—and, therefore, invidious discrimination." *B.P.O.E. Lodge No. 2043 of Brunswick v. Ingraham*, 297 A.2d 607, 616 (Me. 1972), *appeal dismissed*, 411 U.S. 924, 93 S.Ct. 1893, 36 L.Ed.2d 386 (1973), *reh'g denied*, 412 U.S. 913, 93 S.Ct. 2288, 36 L.Ed.2d 977 (1973). Moreover, "[b]efore the court can find an equal protection viola-

---

6. *See also State v. Reny*, 511 A.2d 1066, 1067 (Me.1986); *State v. Higgins*, 338 A.2d 159, 161–62 (Me.1975); *see generally Wagshal v. Selig*, 403 A.2d 338, 340–42 (D.C.App.1979); *Perkins v. Esk-* *ridge*, 278 Md. 619, 366 A.2d 21, 27–32 (1976), *overruled on other grounds, Parrott v. State*, 301 Md. 411, 483 A.2d 68, 75 (1984).

tion, it must at least have some indication that there exist similarly situated persons who have not been treated equally." *Brann v. State*, 424 A.2d 699, 703 (Me. 1981). The Department's revocation of good time credits here was neither an arbitrary exercise of power nor a disciplinary sanction imposed solely on the petitioner, but rather was an across-the-board administrative action applicable equally to the petitioner and to all others similarly situated. It is neither invidious discrimination nor irrational to require that all inmates, including the petitioner, who were sentenced under the old statute but not released before the revocation of good time credits by the Department be treated equally. The fact that a group of inmates who received additional good time credits on the basis of the statute we now declare unconstitutional may have received an earlier discharge date does not mandate that the State continue to award good time credits on the basis of the unconstitutional statute.

We conclude that, based on the unconstitutionality of the statute on which the petitioner received additional good time credits, the retroactive revocation of those credits by the Department of Corrections worked no constitutional violation.

We similarly find no merit in any of the petitioner's other constitutional challenges.

Accordingly, the entry is:

Judgment affirmed.

All concurring.