Theodore LITTLEFIELD, Petitioner,

v.

C. Mark CATON, Director Downeast Correctional Facility, et al., Respondents.

Civ. No. 87–0330–P.

United States District Court, D. Maine.

Jan. 29, 1988.

Michael L. Parker, Murray, Plumb & Murray, Portland, Me., for petitioner.

Peter J. Brann, Asst. Atty. Gen., Augusta, Me., for respondents.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

GENE CARTER, District Judge.

In this action, Petitioner, who is imprisoned in Maine's Downeast Correctional Facility, seeks relief under 28 U.S.C. § 2254. He asserts that the Department of Correction's revocation of some of the good time awarded him during the early part of his sentence and some earned subsequently constitutes a violation of his rights under the due process and equal protection clauses of the United States Constitution. Petitioner has exhausted his state remedies.

### I.

In January 1976 Petitioner was sentenced to eight-and-one-half to twenty years imprisonment for manslaughter. Under the then applicable statute, 34 M.R.S.A. § 705 (1965), he received an allotment of good time (time to be deducted from his sentence) at a rate of seven days per month. The good time was awarded "up front", that is, at the beginning of his sentence, and his parole and discharge dates were set accordingly. Under that statute, Petitioner could also earn a deduction of an extra two days per month for meritorious good time service.

On May 1, 1976, the Maine Criminal Code was amended, increasing good time credits from seven to ten days per month up front. 17–A M.R.S.A. § 1253 (1976). The new good time provisions were made retroactive upon election to those prisoners sentenced before the 1976 Code's enactment. 17–A M.R.S.A. § 1254 (1976). Petitioner so elected, and his parole eligibility and discharge dates were thus computed at the rate of ten days per month. Although the good time statute was again amended in January 1978, providing that good time would be awarded on a monthly basis rather than up front, 17–A M.R.S.A. § 1253 (1978), express provision was made for retention of up-front good time already credited to previously sentenced prisoners. *Id.* § 1254(3). In 1983, another amendment provided that good time would again be

available up front and increased from two to three the number of meritorious good time days that could be earned per month. 17–A M.R.S.A. § 1253 (1983).

In February 1985, the 1983 amendment permitting retroactive application of the up-front method of calculating good time to persons sentenced between the 1978 and 1983 amendments was declared unconstitutional. *Bossie v. State*, 488 A.2d 477 (Me. 1985). The basis for the decision in *Bossie* was that the statute violated the constitutional doctrine of separation of powers, by commuting sentences legislatively when that function is reserved to the executive branch.

Relying on *Bossie* and an opinion of the Maine Attorney General, in April 1985 the Department of Corrections determined that the 1976 amendment retroactively increasing up-front good time from seven to ten days per month was also unconstitutional. Accordingly, the Department recalculated the good time of prisoners, including Petitioner, who had been sentenced previously but who elected to have their good time calculated under the 1976 amendments. Recalculation of Petitioner's good time on the basis of seven days per month resulted in 707 fewer good-time days than he had previously been awarded. Meritorious good time that Petitioner had earned, beyond the two days per month permitted before the 1983 amendments, was also revoked. Subsequently, the Law Court, in a decision based on *Bossie*, held the 1976 amendments unconstitutional. *Chestnut v. State*, 524 A.2d 1216 (Me.1987).

II.

Petitioner argues that he has a protected liberty interest in the good time that was awarded him under the retroactivity provisions of the 1976 amendments. He further argues that the withdrawal of his good-time credit almost nine years after it was awarded because of the presumed (and subsequently determined) unconstitutionality of the statute under which it was awarded constitutes a denial of his rights to due process and equal protection under the Fourteenth Amendment of the United States Constitution.

■ Respondents assert that Petitioner has no legitimate protected liberty interest in good time awarded under an unconstitutional statute. The Court disagrees. In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the United States Supreme Court held that due process protects inmates from the arbitrary loss of statutorily provided good-time credits which were granted subject only to good behavior. *See also Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979) (describing Court's holding in *Wolff v. McDonnell*). The constitutional stature of a prisoner's interest in good-time credit derives from its status as a statutorily-created expectation revocable only as a sanction for misconduct. *Wolff v. McDonnell*, 418 U.S. at 557, 94 S.Ct. at 2975; *see also Carlson v. Oliver*, 372 A.2d 226, 229 (Me.1977). This expectation, or liberty interest, is none the less real because the statute creating it is later held unconstitutional.

III.

■ The question then arises whether Petitioner's due process rights were violated when, after the then applicable statute was determined unconstitutional, his good-time credits were recalculated under the appropriate statute, effectively revoking some of the previously awarded good time. Petitioner relies on two decisions of the First Circuit Court of Appeals to support his thesis that deprivation of his good time, after his almost nine years of reliance on it, was a violation of due process. The Court of Appeals first suggested that due process might require a temporal limit on a court's power to correct an invalid sentence in *Breest v. Helgemoe*, 579 F.2d 95, 101 (1st Cir.1978). The Court stated:

When a prisoner first commences to serve his sentence, especially if it involves a long prison term as here, the prospect of release on parole or otherwise may seem but a dimly perceived, largely unreal hope. As the months and years pass, however, the date of that

prospect must assume a real and psychologically critical importance. The prisoner may be aided in enduring his confinement and coping with the prison regime by the knowledge that with good behavior release on parole or release outright will be achieved on a date certain. After a substantial period of time, therefore, it might be fundamentally unfair, and thus violative of due process for a court to alter even an illegal sentence in a way which frustrates a prisoner's expectations by postponing his parole eligibility or release date far beyond that originally set.

*Id.* The Court found the short, two-week period between sentencing and resentencing in *Breest* constitutionally permissible and did not decide how long or under what circumstances the state could wait to enhance an invalid sentence. *Id.*

Seven years later the Court of Appeals had the opportunity to consider a similar issue in the context of parole eligibility. In *Lerner v. Gill,* 751 F.2d 450 (1st Cir.1985), petitioner had been sentenced to serve consecutively two life terms plus ten years. The statute applicable at the time the crime was committed provided that prisoners sentenced to life imprisonment had to serve at least twenty years before becoming eligible for parole. That statute was amended before sentencing to provide that prisoners sentenced to imprisonment for life had to serve at least ten years. In August 1973 the Rhode Island Attorney General advised the Parole Board that petitioner would become eligible for parole after serving ten years. Accordingly, petitioner was transferred to a minimum security facility and granted other privileges which relate to parole-eligible status. In October 1979 a new Attorney General rendered an opinion that a prisoner who had been sentenced to two consecutive life sentences had to serve ten years for each sentence, for a total of twenty years, before becoming eligible for parole. Following this opinion, petitioner was returned to maximum security to serve at least ten more years before becoming parole eligible. The Attorney General's opinion ultimately was affirmed, in October 1980, by an advisory opinion of the Rhode Island Supreme Court. With this backdrop, the Court of Appeals addressed the question whether "the Rhode Island Supreme Court's construction of the 1970 parole statute was so unforeseeable, and Lerner's reliance on a more favorable interpretation so prejudicial, as to bring Lerner within the ambit of the principle we suggested in *Breest.*" *Id.* at 458. Expressing the opinion that the *Breest* principle would operate in "presumably extreme circumstances," *id.,* the court held that it did not.

Although the number of years before withdrawal of Petitioner's good time was significantly greater in this case than the periods discussed in *Breest* and *Lerner,* the Court is satisfied that this "interval of elevated hopes," *id.* at 459, does not present the extreme prejudice which the Court of Appeals held necessary to constitute a due process violation in *Lerner.*

As the court stated in *Lerner:* "It is a fact of life, unlikely soon to be altered, that new laws are often not challenged and finally interpreted until a number of years go by." *Id.* Such was the case here. In what appears to be a limitation on the duration of expectation consideration posited in *Breest,* the court in *Lerner* looked for "other, more tangible prejudice" than just the raising and thwarting of petitioner's expectations.[1] *Id.*

In this case, as in *Lerner,* that more tangible prejudice is missing. Petitioner is not put in a worse position than he would have been in had the error not been made. His good time has now been calculated using the same statute under which it was initially calculated when he was sentenced. Moreover, the Court notes that Petitioner's parole eligibility has not been postponed

---

1. The Court stated:
   We would be most reluctant to hold that the due process clause of the Constitution took away from the State of Rhode Island the power to consider and apply its laws correctly in this situation. Only in rare circumstances have courts allowed the misconstructions of officials to estop the proper execution of state or federal law, and such cases have involved prejudice and harm beyond frustrated expectations.
   *Lerner,* 751 F.2d at 459.

"far beyond that originally set," *Breest,* 579 F.2d at 101, under the unconstitutional statute. In *Breest,* the changed sentence delayed petitioner's eligibility for parole by twenty-two years and in *Lerner* by ten years. While Petitioner's expectation may have been held longer, the actual change in his expectations was not nearly as drastic as that experienced by petitioners in *Breest* and *Lerner.*

### IV.

■ Petitioner also argues that *Chestnut v. State,* 524 A.2d 1216, does not apply to Petitioner because, having served the minimum amount of his sentence, he did not have his sentence reduced or commuted by the change in the good-time statute. This argument is unavailing. Chestnut himself had been sentenced to a term of one to ten years and had served far more than the minimum when his case was decided. Also, the Law Court pointed out in *Bossie* that "good time credits are an integral part of the sentence and changing the calculation of good time changes the effective length of a sentence." 488 A.2d at 479. It is plain that the term "sentence" comprehends its full range and not just its minimum.

### V.

■ Petitioner also asserts that his rights to procedural due process have been violated because he was not granted adequate notice and hearing before his good time was revoked. Although Petitioner was entitled to procedural due process, the process he was afforded was adequate under the circumstances. Petitioner received a notice from the Commissioner that he was requesting an opinion from the Attorney General on the anticipated effect of *Bossie* on the good-time statute of state prisoners, and he received a detailed explanation of the reasons for the recalculation when it was effected. Petitioner could have, and has, mounted a legal challenge to the Department's actions. A hearing in this case, which involved a question of legal construction rather than any factual determination or exercise of discretion by the Department, would not have done anything to advance the merits of Petitioner's claims. *See Chestnut,* at 1220. The Court therefore finds no procedural due process violation.

### VI.

■ The Court also rejects Petitioner's claim that his right to equal protection of the laws was violated because some prisoners have obtained their release in part through application of the laws now found to be unconstitutional. Petitioner argues that since those persons have not been reincarcerated, the State must have a rational reason for revoking the good-time credit of those still incarcerated. The Maine Law Court has rejected an identical claim. *Chestnut,* 524 A.2d at 1220–21. As that court pointed out, the Department's revocation of good-time credits was applied equally to Petitioner and all of those similarly situated (*i.e.,* those who were sentenced under the old law but had not been released before the revocation of good-time credits by the Department). The group to which Petitioner compares himself may have received a windfall, but the State is not required to perpetuate its error by continuing to release prisoners on the basis of an unconstitutional statute. *Id., see also Baker v. Baxley,* 348 So.2d 468, 472 (Ala. 1977). The Court finds this reasoning persuasive.

### VII.

■ Finally, Petitioner asserts that he was unconstitutionally deprived of extra meritorious good time that he earned under the 1983 amendments to the Maine Criminal Code. Although neither *Bossie* nor *Chestnut* discussed the constitutionality of the meritorious good time provision of the 1983 amendments, it is plain that if applied to persons sentenced before its effective date, it would suffer from the same constitutional infirmities as the provisions discussed in *Bossie* and *Chestnut.* Specifically, it would "increase the amount of good-time credits available to prisoners already in the custody of the Department of Corrections at the effective date of the stat-

ute," *Bossie*, at 479–80, and thus would effect a commutation of an existing sentence in violation of the separation of powers.

Petitioner asserts that he relied upon the meritorious good time provision and acted affirmatively to earn the meritorious good-time credits in question. The Court notes again that the Department's decision has not put Petitioner in a worse position than he originally was in at the time of his sentence. While his expectations of an earlier release date have been dashed, Petitioner has experienced no tangible prejudice. His work in reliance on earning meritorious good time has been rewarded, even though not in the measure expected by him.

■ Petitioner argues that even if the meritorious good time provision of the 1983 Code is found to be unconstitutional, there is no justification for applying such a finding retroactively. As the Attorney General pointed out in his opinion letter to the Commissioner of Corrections, the only way in which the statute will be termed unconstitutional is if it is construed to apply to individuals like Petitioner who were sentenced before it became effective. Just as the court in *Lerner* stated that it would be reluctant to take away from the state the power to apply its laws correctly, this Court, without a showing of far greater prejudice, would be unwilling to force the Department of Corrections to apply the meritorious good time statute in such a manner that it would then be unconstitutional.

Finally, the Court notes that Petitioner's procedural due process claim on the meritorious good time issue is unavailing for the same reasons it was unavailing in the general good time context. Accordingly, it is ORDERED *that* Petitioner's petition for a writ of *habeas corpus* under 28 U.S.C. § 2254 be, and it is hereby, DENIED.